Wieskerger Appeal.
Wyoming Area School Director Election.

Argued January 17, 1972. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*Anthony B. Panaway,* with him *Carmen John Maffei,* for appellant.

*J. Earl Langan,* for appellee.

OPINION BY MR. JUSTICE NIX, April 20, 1972:

This is an appeal from the Luzerne County Court of Common Pleas affirming decision of the Luzerne County Return Board in the Wyoming Area School Director Contest. The parties herein are two of six aspirants for the three seats that were to be filled in the general election held on November 2, 1971.

A stipulation of counsel provided:

"1. It is hereby agreed and stipulated by and between Anthony B. Panaway and Carmen John Maffei, counsel for appellant, and J. Earl Langan, counsel for appellee, that there are 16 absentee ballots marked in either red or green ink, which have been counted in the votes for school director of Wyoming Area in the November 2, 1971 election, which resulted in the election of Casimir Kizis.

"2. It is further agreed and stipulated that the only question for this Honorable Court to resolve is the legality of the marking and counting of the aforesaid ballots in the election.

"3. It is further agreed and stipulated that counsel for appellant will withdraw and does hereby withdraw any other objections they have to the decision of the Luzerne County Court of Common Pleas in the aforesaid election matter." By virtue of the small plurality the resolution of this issue will decide the

election for the third seat which is in contest. This Court assumed plenary jurisdiction under the Appellate Court Jurisdiction Act of 1970, July 31, P. L. 673, Art. II, §205, 17 P.S. §211.205, to assist in the determination of the dispute.[1]

The pertinent provision of the Election Code provides as follows: "[a] No ballot which is so marked as to be capable of identification shall be counted. Any ballot that is marked in blue, black or blue-black ink, in fountain pen or ballpoint pen, or black lead pencil or indelible pencil, shall be valid and counted."[2]

In dismissing the objections to the ballots marked in red ink, but otherwise in order, the court en banc stated: "So that the real test of the validity on an absentee ballot marked in this manner is not if it is in blue, black, red or green, but it is capable of identification."[3]

As stated in the *Reading Election Recount Case,* 410 Pa. 62 (1963): "the power to throw out a ballot for minor irregularities should be sparingly used. It should be done only for very compelling reasons. . . . 'Marking a ballot in voting is a matter not of precision engineering but of an unmistakable registration of the voter's will in substantial conformity to statutory requirement'". In construing election laws while we must strictly enforce all provisions to prevent fraud our overriding concern at all times must be to be flexible in order to favor the right to vote. Our goal must be to enfranchise and not to disenfranchise. See, *James Appeal,* 377 Pa. 405 (1954). This section of the code

---

[1] In view of the stipulation of counsel and our acceptance of the cause under Sec. 205 of the Appellate Court Jurisdiction Act there is no reason to consider the question of scope of review raised by the appellee.

[2] Act of August 13, 1963, P. L. 707, §19, 25 P.S. §3063 (1971 supplement).

[3] See lower court's opinion at page 4.

merely assures the validity of ballots marked in blue, black or blue-black ink. It does not as the appellant urges us to find specify that any other type of marking will necessarily be void. We have noted in other cases that the dominant theme of this section is to prevent ballots from being identifiable. "A ballot should not be inva'',lated under Section 1223 of the Act of 1937, supr. /25 P.S. §3063, unless the voter purposely makes a mark thereon or commits some other act in connection with his ballot to distingush and identify it." *McKelvey Appeal,* 444 Pa. 392 at 396 (1971). The proper interpretation of this portion of the statute considering the occasion for its enactment, the mischief to be remedied, and the policy to liberally construe voting laws in the absence of fraud, is that the ballot is valid unless there is a clear showing that the ink used was for the purpose of making the ballot identifiable.

In view of the prevalent use of multi-colored inks today, particularly in ballpoint pens easily accessible to all, we are not persuaded that the electors involved herein attempted by the use of red ink to render their ballots capable of identification.

Accordingly, we affirm the order of court en banc.

---

DISSENTING OPINION BY MR. JUSTICE POMEROY:

While I joined the Court's opinion in *McKelvey Appeal,* 444 Pa. 392, 281 A. 2d 642 (1971), on which the present opinion relies, I do not consider it controlling here, and I therefore respectfully dissent.[1]

In *McKelvey, supra,* the Court held that the writing by an elector of a person's name on the bottom of the

---

[1] The majority also rely upon *Reading Election Recount Case,* 410 Pa. 62, 188 A. 2d 254 (1963), which I find difficult to distinguish from the case at bar. Justice (now Chief Justice) JONES noted a dissent in *Reading,* and dissenting opinions were filed by

422

ballot did not in the circumstances of that case render that ballot capable of identification, and thus violative of the Election Code, §1223, 25 P.S. §3062(a). This same section of the Code, however, dealing in detail with the manner of marking and counting of ballots, expressly provides that a ballot marked "in blue, black or blue-black ink, in fountain pen or ballpoint pen, or black lead pencil or indelible pencil, shall be valid and counted: . . ." When the legislature has, with such specificity, stated what ballot markings shall be valid and counted, it has in effect also stated, in aid of the cherished secrecy of the American ballot, that use of inks or instruments other than those specified is not permissible and that ballots so marked shall be invalid and not counted.

That §1223 is to be read as I have indicated is borne out by the form of official ballot which the legislature itself prescribed by §1003 of the Code, 25 P.S. §2963. The instruction to the voter required to be printed on each ballot contains the following admonition, among others: "Mark ballot *only* in black lead pencil, indelible pencil or blue, black or blue-black ink, in fountain pen or ballpoint pen. . . ." (Emphasis supplied.)[2] Thus the question here presented is not whether the elector had a purpose to make the ballot identifiable, or whether the red ink did in fact have that effect in this particu-

---

Mr. Justice COHEN and Mr. Justice ROBERTS. With due respect to the majority of the *Reading* court, I cannot help but feel that the case was wrongly decided.

[2] It is to be noted that §1223 of the Election Code was last amended in 1963 (Act of August 13, 1963, P. L. 707, §19, 25 P.S. §3063 (Supp. 1971)) and that §1003 of the Code was amended by the same statute, and again in 1968 by the Act of July 16, 1968, P. L.    , No. 175, §1. At the times of these amendments the use of ballpoint pens and inks of various colors was already commonplace.

lar case. Those factors are not relevant if, as I believe, the use of red ink has been interdicted.

While I endorse the desire of the majority to construe the Code liberally in favor of validity of a ballot, there must be rules of the game. As Mr. Justice ROBERTS observed in his dissenting opinion in *Reading Election Recount Case*, 410 Pa. 62, 70, 188 A. 2d 254 (1963), "No hardship is [thereby] imposed on the voter. If the voter undertakes to deviate from the requirements prescribed for all, he takes the risk of his failure to comply. The concern is not the possible disenfranchisement of a voter who casts his ballot in a manner not permitted by the Election Code, but rather the preservation of the sanctity of the whole election process by giving effect to only those ballots marked in accordance with the election laws. . . ." It is my view that the electors in the ballots here challenged transgressed one of the prescribed rules, though no doubt inadvertently. I would therefore reverse.

Mr. Justice ROBERTS joins in this dissenting opinion.