# Mellody Appeals.
## Lancaster County General Election.

Argued April 28, 1972. Before Jones, C. J., Eagen, O'Brien, Roberts, Pomeroy, Nix and Manderino, JJ.

*Paul A. McGlone,* with him *Joseph Marzzacco* and *Michael W. Simon,* for appellants.

*Paul H. Price* and *C. H. Wells, IV,* with them *James G. McDonough, II,* for appellee.

OPINION BY MR. JUSTICE O'BRIEN, November 17, 1972:

These appeals, consolidated for argument, are from various rulings of the Court of Common Pleas of Lackawanna County arising out of the election for county commissioners held on November 2, 1971.

Before reaching the merits of the controversy, we must resolve a question as to the scope of our review. Appellant contends that our review is on broad certiorari, while appellee argues that our review is limited to narrow certiorari, and, therefore, must concern itself only with questions of jurisdiction, the regularity of the proceedings, excess in the exercise of power and constitutional issues. The question arises because the original appeals from the Lackawanna County Return Board's conclusions were filed in the Court of Common Pleas pursuant to §1407 of the Election Code, Act of June 3, 1937, P. L. 1333, art. XIV, §1407, 25 P.S. §3157. That section states that: "No appeal shall be allowed or granted from any order or decree of the court of common pleas made in pursuance of this sec-

tion." Prior to the adoption of the new Pennsylvania Constitution in 1968 and the passage of the Act of December 2, 1968, P. L. , No. 351, §§1-2, 12 P.S. §§1111.1-1111.2 and the Appellate Court Jurisdiction Act of July 31, 1970, P. L. 673, art. I, §§101 et seq., 17 P.S. §§211.101 et seq., our review would indeed have been limited to narrow certiorari. That result, however, no longer obtains, since art. V, §9 of the new Constitution provides that: ". . . there shall . . . be a right of appeal from a court of record . . . to an appellate court, the selection of such court to be as provided by law. . . ." The question posed was determined by us in favor of review on broad certiorari in *Millersville Annexation Case,* 447 Pa. 310, 290 A. 2d 102 (1972), and that case is controlling in the instant situation.

Appellant poses a series of questions concerning the computation and canvassing of the returns from the November 2, 1971, General Election and the several rulings of the Court of Common Pleas on his challenges to the conclusions reached by the County Election Return Board.

Appellant complains:

(1) That inadequate notice was given to voters who were, therefore, not afforded reasonable opportunity to defend the validity of their ballots against challenges thereto;

(2) That where the reason for the challenge is not marked on the absentee ballot envelope, the challenge cannot be sustained;

(3) That persons other than watchers are not authorized to challenge absentee ballots;

(4) That there should have been a recount of the absentee ballots since there was insufficient proof to establish the probability of improper access to those ballots or the likelihood that they had been tampered with;

(5)   That the absentee ballots of certain patients of Ransom Convalescent Home, a public institution, should have been counted; and

(6)   That certain ballots declared invalid by reason of the way in which they were marked should have been counted.

We will not attempt in this opinion to discuss each of appellant's points. The court below has written a series of exhaustive opinions covering each of appellant's contentions, and we conclude that those opinions adequately and correctly dispose of all of appellant's arguments, with the exception of one point which we will discuss infra. Moreover, we have carefully reviewed the record in this case and find that the conclusions of the court below, with the one exception previously noted, are amply supported by the evidence.

We conclude, however, that the court below erred in one respect. The error deals with six absentee ballots which were disallowed by the court below. Four of those absentee ballots were disallowed because the electors marked their respective ballots in red ink. We faced and decided that specific question in an appeal from decisions of the Luzerne County Court of Common Pleas in an election for school director which took place on the same day as the election which forms the basis for the case at bar. In *Wieskerger Appeal,* 447 Pa. 418, 290 A. 2d 108 (1972), an opinion filed by this Court on April 20, 1972, we held that absentee ballots marked in either red or green ink were properly counted. We there said: "In view of the prevalent use of multi-colored inks today, particularly in ballpoint pens easily accessible to all, we are not persuaded that the electors involved herein attempted by the use of red ink to render their ballots capable of identification." At page 421.

There is nothing in this record which differentiates the four ballots marked with red ink from the sixteen

ballots marked in either red or green ink which we found to be valid in *Wieskerger.*

The other two absentee ballots which the court below refused to allow to be counted in this phase of the case were ballots in which the electors blocked out or completely filled in with ink the appropriate block or blocks for voting, rather than placing an "x" or "checkmark" in the appropriate block or blocks. Referring once again to *Wieskerger,* page 420, we there said: "As stated in the Reading Election Recount Case, 410 Pa. 62 (1963): 'the power to throw out a ballot for minor irregularities should be sparingly used. It should be done only for very compelling reasons. . . . "Marking a ballot in voting is a matter not of precision engineering but of an unmistakable registration of the voter's will in substantial conformity to statutory requirement" '. In construing election laws while we must strictly enforce all provisions to prevent fraud our overriding concern at all times must be to be flexible in order to favor the right to vote. Our goal must be to enfranchise and not to disenfranchise [citing a case]."

While we were there concerned with ballots marked with red or green ink rather than the blue, black or blue-black ink as specified in the Election Code, the same rationale logically applies to ballots in which the appropriate blocks have been filled in rather than marked with an "x" or "checkmark" as specified in the Code. In *Wieskerger,* at page 421, we said: "The proper interpretation of this portion of the statute considering the occasion for its enactment, the mischief to be remedied, and the policy to liberally construe voting laws in the absence of fraud, is that the ballot is valid unless there is a clear showing that the ink used was for the purpose of making the ballot identifiable."

We conclude, therefore, that unless there is a clear showing that the filling in of the blocks was for the

purpose of making the ballots identifiable, those ballots, too, are valid. Just as *Millersville Annexation Case, supra,* is controlling on the scope of our review. *Wieskerger Appeal, supra,* is controlling on the question of the six ballots specifically referred to above.

The orders of the court below are modified to the extent that the six ballots hereinabove specifically referred to are directed to be counted and, as modified, are affirmed.

Mr. Chief Justice JONES, Mr. Justice EAGEN, Mr. Justice NIX and Mr. Justice MANDERINO concur in the result.

———

DISSENTING OPINION BY MR. JUSTICE POMEROY:

The color-blindness of the majority persists; once again it is unable to distinguish red ink from ink that is blue, black, or blue-black.

As pointed out in *Wieskerger Appeal,* 447 Pa. 418, 421, 290 A. 2d 108 (1972) (dissenting opinion of the writer, joined by Mr. Justice ROBERTS) two separate sections of the Election Code—one dealing with the marking and counting of ballots, the other with instructions to be given the voters—specifically permit the use of blue, black, or blue-black ink only. "[T]he question . . . presented is not whether the elector had a purpose to make the ballot identifiable, or whether the red ink did in fact have that effect in this particular case. Those factors are not relevant if, as I believe, the use of red ink has been interdicted." 447 Pa. at 422-23 (dissenting opinion). We do our system of democracy no great service by denying the legislature's power to write the rules of the game in the conduct of elections. That, unfortunately, is what the Court does today, what it did in *Wieskerger Appeal,* supra, and also what was done as well in *Reading Election Recount Case,* 410 Pa. 62, 188 A. 2d 254 (1963) (Mr. Justice, now Chief Justice JONES noting a dissent, and

Mr. Justice COHEN and Mr. Justice ROBERTS filing separate dissenting opinions).

I would disallow the four ballots marked in red and thus affirm the orders of the court of common pleas without modification.

Mr. Justice ROBERTS joins in this dissenting opinion.