## In re Ballot Recount in Sixteenth Representative District

*Robert C. Reed* and *John J. Petrush,* for Albert S. Kuhni.

*Arthur S. Herskovitz* and *Edward A. Mihalik,* for Charles Laughlin.

ROWLEY, J., January 12, 1973.—This case is before us on appeal from a decision of the Special Recount Board appointed by the court to count the ballots cast in 26 precincts for the office of representative to the General Assembly from the Sixteenth Legislative District in Beaver County. Following the election of November 7, 1972, the Beaver County Return Board certified that the Democratic candidate, Charles Laughlin, was the winner of the contest for the office of representative to the General Assembly from the Sixteenth Legislative District in Beaver County. According to the certification of the return board, Mr. Laughlin was the winner by 69 votes over his Republican opponent Albert S. Kuhni. The board's certification was filed on November 24, 1972. On November 28, 1972, petitions were filed by electors residing in 26 of the precincts located in the Sixteenth Legislative District asking that the respective ballot boxes be opened and that the votes be recounted pursuant to section 1701 of the Election Code of June 3, 1937, P. L. 1333, 25 PS §3261. On December 5, 1972, a Recount Board was appointed by order of the court. The board was directed to commence recounting the ballots on December 11, 1972. The Recount Board filed a detailed written report with the court on January 2, 1973. That report showed that Mr. Kuhni was the winner of the election by a total of 37 votes over Mr. Laughlin. However, on Friday afternoon, December 29, 1972, after the recount had been completed, but before the Recount Board had finished its detailed written report

and filed the same with the court, counsel for Laughlin filed a petition and motion to terminate and dismiss election recount proceedings for lack of jurisdiction over the subject matter. A hearing was scheduled for January 4, 1973, on Laughlin's petition to dismiss the recount proceedings. On January 2, 1973, counsel for Kuhni filed an answer to the petition to dismiss the recount proceedings. Following a conference on January 4, 1973, between the court and counsel for the candidates, it was agreed to postpone any evidentiary hearing and to set the matter for hearing and argument on Wednesday, January 10, 1973. At that time it was agreed the court would consider the matters raised by Laughlin's petition and Kuhni's answer thereto and any stipulations entered into between the parties.

In addition, both candidates, Kuhni on January 3, 1973, and Laughlin on January 4, 1973, filed appeals from the report of the Recount Board, section 1407 of the Election Code, 25 PS §3157, challenging rulings of the Recount Board on certain disputed ballots. At the conference with the court on January 4, 1973, counsel agreed to review the disputed ballots and submit to the court for the court's determination, any ballots on which they could not agree. During the recount proceedings by the board, a total of 1,369 ballots were challenged by one or the other of the candidates' representatives. However, following the meeting of counsel and review of the challenged ballots by them, a total of 112 ballots have been submitted for rulings by the court.

Thus, before us for consideration, at this time, is (1) the issues raised by Laughlin's petition to dismiss the recount proceedings, and (2) if that petition is denied a ruling on 112 contested and disputed ballots.

## PETITION TO DISMISS

The basis of Laughlin's petition to dismiss the recount proceedings is that most, if not all, of the 26 petitions presented were not properly verified. The allegation is that petitioners, although having signed the petitions, did not appear before the notary public whose signatures and seals were affixed to the petitions. Attached to each of the 26 petitions is a verification signed by a duly authorized notary public and dated and sealed by the notary. In other words, although the verifications to the 26 petitions appeared to be proper, valid and correct on their face when presented to the court, the petition to dismiss the proceedings avers that, in fact, petitioners did not appear before the respective notaries and, therefore, this court was without jurisdiction to order a recount and the entire proceedings must be set aside. Kuhni, by his answer to this petition, claims that: (1) the Election Code does not authorize such a proceedings as envisioned by Laughlin's petitions; (2) Laughlin lacks legal standing to complain of defects in the petitions; (3) Laughlin having failed to appeal from the order of November 28, 1972, authorizing a recount, that order is conclusive and binding and may not now be challenged; (4) the alleged defect in the verifications is one which may be cured by amendment, and amendments should be allowed; and (5) the alleged defects were waived by Laughlin by his failure to raise the issue when it was known to him.

At the hearing before the court on January 10, 1973, the candidates, by their counsel, agreed and stipulated that one or more of the petitioners did not appear before the notary who executed the verification in all of the precincts with the exception of the Tenth Precinct in Aliquippa and the Third Precinct in Ambridge.

Laughlin's claim that this court lacks jurisdiction to proceed with the recount proceedings, because of this defect in the verifications, is based on the case of Taylor Township Election, 79 D. & C. 193 (Fulton Co. (1951)). In that case the petition for a recount was delivered to the prothonotary of the court. When delivered, the petition was not verified. The prothonotary, upon later noticing the defect, filled in the affidavit himself. Judge Sheely held that under such circumstances the entire recount proceeding was void and the original return, rather than the recount, was the official election result. We note that that case may be distinguished in two respects from the case before us. In the present case, Kuhni's petitions, when presented to the court were apparently valid and contained what appeared to be proper verifications in each case. On the other hand, in the Taylor Township Case, the petition, when delivered to the court's clerk, was clearly defective and not in proper form. Furthermore, in the Taylor Township Case none of the petitioners appeared before the prothonotary who signed the jurat. On the other hand, in the case before us, it may be inferred from the stipulation of the parties that in some of the petitions at least some of the petitioners may have appeared before the respective notaries. However, although these distinctions may be sufficient to warrant us in declining to follow the conclusions of Judge Sheely in the Taylor Township Case, we prefer to base our conclusion on more basic considerations. We have carefully read and considered the opinion and the reasons set forth by Judge Sheely. We have the greatest admiration and respect for his decisions. However, in this instance we feel compelled to respectfully disagree with his conclusion. We are of the opinion that a proper verification is not required to vest jurisdiction in this court over these proceedings. As we have had

occasion to point out, the matter of jurisdiction does not depend upon the right of the plaintiff or the petitioner to the relief sought but the question before the court is whether the court may hear and dispose of controversies of the general class to which the particular case belongs: Constructors Association v. The Interstate Amiesite, 30 Beaver 75 (1970). There can be no question but that this court does have the power and the right to hear and decide cases such as the one before us at this time. The jurisdiction to hear such cases has been vested in this court and all common pleas courts of the Commonwealth by the Legislature. Our right to hear and decide such cases does not depend upon the accuracy of a notary public's jurat. The 26 precincts involved are within the territorial jurisdiction of this court. The court has the power, the right and the duty under the Election Code to hear and decide such cases as this one. Moreover, it appears that by the overwhelming weight of authority in this Commonwealth defects in verifications are matters which may be cured by amendment: General Mills, Inc. v. Snavely, 203 Pa. Superior Ct. 162 (1964); Hare v. American General Life Insurance Company, 43 D. & C. 2d 126 (1967); McMinn v. McKee, 9 Beaver 215 (1947); 2A Anderson Pa. Civ. Prac., §§1024.11 and 1024.12. This same principle has been applied to cases arising under the Election Code. In Ross Nomination Petition, 411 Pa. 45 (1963), it appeared that the candidate's affidavits to his nominating petitions were defective for the reason that they had not been sworn to in the presence of the subscribing notary public. The action of the trial court allowing the candidate to file proper affidavits as amendments to his petitions was affirmed by the Supreme Court on appeal. It is true that the Election Code provided in that case that the court had discretion to allow amendment of

" 'material errors or defects apparent on the face of the nomination petition. . . .' " The important point, however, is that the court correctly held that the failure to personally appear before the notary public was the type of defect that could be cured by amendment. We see no reason to reach a different conclusion in this case. We do not mean to indicate by this decision that we approve of or condone the actions of the notary publics involved herein. There are sanctions available which may be imposed against a notary who fails to properly perform the duties of his or her position. For example, the notary's commission may be revoked by proper proceedings, Act of August 21, 1953, P. L. 1323, sec. 22, 57 PS §168, or the notary may be liable in a suit for civil penalties: Commonwealth to use of Willow Highlands Company v. United States Fidelity & Guaranty Co., 364 Pa. 543 (1950). However, we do not believe that an appropriate sanction against such notaries includes denying electors the right to have ballots cast in an election properly and correctly counted.

Being of the opinion that any defect in the verifications in this case may be amended, we are also of the opinion that Laughlin's failure to make timely objection to the verifications constitutes a waiver by him of those defects and effectively estops him from raising them after the recount has been completed. "Where a court has general jurisdiction over the subject-matter of the litigation any irregularity in the method by which the court obtains jurisdiction of a particular case is usually waived by failure to raise the objection timely": Papencordt v. Masterwork Paint Co., 412 Pa. 508 (1963). From the testimony taken at the hearing in this case, it is apparent that Mr. Laughlin was advised prior to the start of the recount in this case that there was a possibility that some of the petitioners for

a recount had not actually appeared before the sub-scribing notaries. However, it was not until December 29, 1972, almost three weeks later, and after the recount was completed that any challenge was made to the respective verifications. Where a candidate, knowing of possible defects in the petitions seeking a recount, nevertheless stands by and participates, through his representatives, in the recount proceedings, and fails to make any complaint until the recount is completed, he has effectively waived the challenged defects.

We hold, therefore, that the defects in the verifications of the petitions for recount may be amended and being amendable were waived by the failure to timely challenge them. For these reasons, Laughlin's petition to dismiss and terminate the recount proceedings will be denied.

## COUNTING OF BALLOTS

At the hearing before the court on January 10, 1973, counsel for Kuhni made an oral motion to dismiss Laughlin's appeal from the Recount Board's decision for the reason that he had not "set forth why he feels that an injustice has been done," in his written appeal. It is correct that section 1407 of the Election Code, 25 PS §3157, requires that an appellant set forth such reasons. There is reason for such a requirement since it aids and assists the court in ruling on disputed ballots. It is also clear that Laughlin's appeal fails to set forth reasons for the appeal. However, here again, we are of the opinion that the defect in Laughlin's appeal petition has been waived by Kuhni's failure to timely raise the issue. After Laughlin's appeal petition was filed and copies delivered to counsel for Kuhni, counsel met

with the court and discussed further proceedings in the case. In addition, Kuhni's counsel met with Laughlin's counsel and reviewed the disputed ballots and agreed upon the disposition of certain ballots. It was only at the final hearing on January 10, 1973, that the sufficiency of Laughlin's appeal petitions was challenged. We are of the opinion that the failure to raise this contention earlier constitutes a waiver of such a defect. However, we would note parenthetically that counsel should, in filing such appeals, comply with the requirement of the statute, as did Kuhni's counsel in this case.

At the hearing before the court on January 10, 1973, it was agreed by the candidates, after reviewing the disputed and challenged ballots, that the vote at that time, counting all 42 precincts in the Legislative District, was 10,734 for Laughlin and 10,738 for Kuhni. It was further agreed that the court should review and pass upon 112 disputed ballots. It was also agreed that of the 112 ballots, 73 had been counted by the Recount Board and were included in the totals stipulated to by the parties. The remaining 39 ballots had not been counted by the board.[1]

At the outset of our consideration of the disputed ballots, certain fundamental principles established by the Appellate Courts of this Commonwealth must be kept in mind. In the absence of fraud voting laws are to be construed liberally. Although provisions

---

[1] The parties also indicated that there was an additional ballot containing a swastika which had not been found but which was being contested. Following the hearing the ballot was presented to the court by the Recount Board members and reviewed by counsel for both candidates. That ballot had not been counted by the Recount Board and counsel for both parties agreed that that ruling was correct.

of the Election Code must be strictly enforced to prevent fraud, in the absence of such fraud we must favor the right to vote. We should seek to enfranchise and not disenfranchise the electorate: Wieskerger Appeal, 447 Pa. 418 (1972). The power to discard ballots for minor irregularities must be used sparingly and then only for very compelling reasons: Reading Election Recount Case, 410 Pa. 62 (1963). When determining whether a ballot has been marked so as to be capable of identification, if there is more than one possible explanation for an unnecessary mark on a ballot, only one of which would indicate that it was used as a symbol of identification, the ballot should not be invalidated on such a mere possibility. "Every rationalization within the realm of common sense should aim at saving the ballot rather than voiding it": Norwood Election Contest Case, 382 Pa. 547 (1955). Also see McKelvey Appeal, 444 Pa. 392 (1971); James Appeal, 377 Pa. 405 (1954); Bauman Election Contest Case, 351 Pa. 451 (1945). Reviewing the ballots with these principles in mind, we have concluded that all of the ballots, with the exception of six, must be counted.

In considering the 73 ballots counted by the Recount Board and presented for our review, we are of the opinion that the board correctly counted all 73. We find no defects or markings on any of those ballots which would justify us in excluding any of them from the recount.

There are 11 ballots which are apparently challenged for the reason that the "X" or "check" are not confined within the voting square. These are Exhibits Ambridge 6E, Aliquippa 11AAA, Aliquippa 1100, Ambridge 6T, Ambridge 8DD, Aliquippa 12VV, Freedom 2E, Freedom 2C, Aliquippa 1CC, Aliquippa 3S

and Aliquippa 4BB. As pointed out by the Supreme Court an election is not a contest in precision engineering. We are satisfied that the voting marks placed on these 11 ballots very clearly indicate the intention of the respective electors and must be counted.

There are another 11 ballots apparently challenged for the claimed reason that they have been marked so as to be "capable of identification." However, such ballots must be counted and not invalidated unless it appears that the purpose of the mark on the ballot was to distinguish and identify the voter: McKelvey Appeal, supra. These ballots are Exhibits Harmony 4H, Freedom 2M, Conway 1B, Aliquippa 8B, Aliquippa 10I, Aliquippa 11LLLL, Aliquippa 6M, Aliquippa 8A, Ambridge 5B, Ambridge 6Q, Aliquippa 12D. These ballots contain such matters as votes for "D. Duck" and "M. Mouse" for President, a checkmark or the word "ok" written next to the instructions on voting a straight party ticket, circles drawn around certain checks or crosses, the scratching out of a vote for one presidential candidate and the words "this one" written after another presidential candidate's name, a line in ink drawn in the box for State Treasurer, an extra "X" used in some voting blocks, a fancy or unique type "X" and a pencil mark or smudge mark on an unrelated part of the ballot. We are of the opinion that none of these markings can be said to have been placed on the ballot for the specific purpose of identifying that particular elector. We think that there are other rational explanations that may be advanced for each such marking and therefore these ballots must be counted.

Three ballots, those being Exhibits Ambridge 1O, Ambridge 1FF, and Aliquippa 1DD, are marked with what appear to be diagonal or vertical lines. However,

it is difficult to determine whether some of the diagonal lines may not in fact be checkmarks. As indicated previously, voting is not to be an exercise in engineering precision. In view of the above announced principles, by which we are to be guided, and the decision of the Supreme Court in Wieskerger Appeal, supra, we are of the opinion that these three ballots very clearly and definitely disclose the intention of the electors and must be counted.

There are six ballots, exhibits Aliquippa 8U, Aliquippa 12A, Aliquippa 12B, Economy 3A, Ambridge 5H, Aliquippa 11BBB, which have been voted by coloring in the entire square rather than by the use of a checkmark or cross. Counsel for Laughlin argues that these should be counted and relies on the recent decision of the Supreme Court in Appeal of Mellody, 449 Pa. 386, 296 A. 2d 782 (1972). Counsel for Kuhni argues that this decision is not binding on us since two of the Justices dissented and the other four Justices only concurred in the result. However, a part of the result in which the four Justices concurred was the modification of the trial court's decision so as to count the ballots in which the appropriate blocks had been completely filled in. We are of the opinion that had the four concurring Justices not agreed with that modification they would have, in a matter of this importance to the election officials and the trial courts of the Commonwealth, so indicated in their concurrence. Therefore, in keeping with the decision in the Mellody Case, supra, these six ballots must be counted.

Two additional ballots, Economy 3B and Ambridge 3V, have been challenged. These ballots contain the word "void" written, one on the front and one on the back. In addition, Exhibit Economy 3B contains a penciled cross in the center of the ballot but it does

not effect the office of Representative in the General Assembly. We are of the opinion that these two ballots should be counted. Based on past experiences, we are aware that it is the practice of some Election Boards, when rejecting a ballot, to write on the ballot the word "void." Although this practice is not approved and should be discontinued by the various election boards in the county, we are of the opinion that those markings do not invalidate the ballots in this case. We are also of the opinion that the other markings on the ballot do not tend to identify the ballots and, therefore, they should be counted.

Finally, there are six ballots which must be rejected. Exhibit Ambridge 1I contains what appears to be the name "Aldo" written above the Democratic Party column. We can think of no common sense rationalization that would explain such a marking other than to clearly identify this ballot as being that of a particular elector. Therefore, it must be rejected. Exhibit Conway 1G contains an "X" in the Democratic Party column and a diagonal line in the Republican Party column. In addition, it appears that an attempt was made to erase the line in the Republican Party column. The code provides that any erasure in the straight party column renders the entire ballot void. Accordingly that ballot must be rejected. Finally, Exhibits Ambridge 4U, Ambridge 2D, Aliquippa 5L and Ambridge 2E must be rejected. Each of these ballots contain votes in two different writing instruments. On each of these four ballots some of the votes have been cast with a pencil and others have been marked with a pen. The Election Code provides that all markings on the ballot must be made by the same pen or pencil. We are of the opinion that this provision must be strictly construed in order to prevent or

discourage fraud in the marking of ballots. Although there is no evidence of fraud in the marking of these four ballots, to allow the use of two different marking instruments would give those inclined to fraudulently mark ballots a greater opportunity to do so. Therefore, we will strictly construe this requirement of the Election Code.

By adding 33 of the 39 uncounted ballots, the resulting totals, for the entire Legislative District, are as follows:

LAUGHLIN 10,763
KUHNI 10,742
For these reasons we make the following

## ORDER

Now, January 12, 1973, Laughlin's petition to dismiss the recount proceedings is denied. Kuhni's oral motion to dismiss Laughlin's appeal is denied. The court having received a report from the Special Recount Board appointed by it, and an appeal having been taken by both candidates from that report, and the court having held a hearing and considered the testimony, stipulation and arguments of counsel, the court now hereby certifies to the Beaver County Board of Elections the correct and accurate vote in each of the 26 precincts, after recount, to be as shown in the certificate attached hereto and signed by the court.

It is further ordered and directed that the Beaver County Board of Elections, pursuant to section 1703 of the Act of June 3, 1937, P. L. 1333, 25 PS §3263, correct accordingly any entries previously made in the returns for the office of Representative to the General Assembly from the Sixteenth Legislative District in the aforesaid 26 precincts.