IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In re: Canvass of Provisional Ballots    :
in the 2024 Primary Election         :
                                  :   No. 628 C.D. 2024
Appeal of: Mike Cabell             :   Submitted: May 31, 2024


BEFORE:   HONORABLE ANNE E. COVEY, Judge
                 HONORABLE STACY WALLACE, Judge
                 HONORABLE MATTHEW S. WOLF, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                                 FILED: July 1, 2024


Mike Cabell (Appellant)[1] appeals from the Luzerne County (County) Common Pleas Court's (trial court) May 15, 2024 order denying his appeal from the County Elections Board's (Board) decisions that accepted a provisional ballot without the required voter signature on the provisional ballot envelope and rejected a provisional ballot by a voter registered to vote in another legislative district. There are four issues before this Court: (1) whether the trial court erred by ignoring the plain language of Section 1210(a.4)(5)(ii)(A) of the Pennsylvania Election Code (Election Code),[2] which provides that a provisional ballot shall not be counted if the provisional ballot envelope is not signed by the voter; (2) whether the trial court erred by permitting Timothy James Wagner (Wagner) to testify at the hearing because he waived his opportunity to testify with regard to his provisional ballot (Wagner Ballot) by not appearing at the Board hearing; (3) whether the trial court

---

[1] Appellant is a candidate in the Republican 2024 Primary Election for Representative in the Pennsylvania General Assembly from the 117th Legislative District.

[2] Act of June 3, 1937, P.L. 1333, *as amended*, 25 P.S. § 3050(a.4)(5)(ii)(A).

erred by permitting Wagner to waive his right to secrecy of his vote when he testified for whom he cast his vote in violation of article VII, section 4 of the Pennsylvania Constitution, PA. CONST. art. VII, § 4; and (4) whether the trial court erred by rejecting the provisional ballot by a voter registered to vote in his new voting district when the voter still resided in his original voting district within the 30 days preceding the 2024 Primary Election. After review, this Court reverses.

Various voting districts in the County returned dozens of provisional ballots to the Board following the 2024 Primary Election for the Republican Party nomination for the Office of Representative in the General Assembly from the 117th Legislative District. On April 29, 2024, the Board held a public hearing, during which all interested parties were afforded an opportunity to review the provisional ballots submitted in precincts located within the 117th Legislative District. *See* Pet. for Rev. ¶ 14. After review, Republican candidate James Walsh (Candidate Walsh) challenged 12 of the provisional ballots that the Board had voted to accept. *See* Pet. for Rev. ¶ 15. Appellant challenged the Wagner Ballot (that was accompanied by a properly executed affidavit) on the ground that the provisional ballot envelope was not signed. *See* Pet. for Rev. ¶ 16. Thus, challenges were lodged on a total of 13 provisional ballots, all of which the Board had voted to accept. *See* Pet. for Rev. ¶ 17. On April 30, 2024, the Board also considered three additional provisional ballots, including the provisional ballot submitted by Shane O'Donnell (O'Donnell) (O'Donnell Ballot), a voter registered to vote in another district. *See* Pet. for Rev. ¶ 20.

The Board scheduled a hearing for May 3, 2024, to determine the validity of the challenged provisional ballots, and the O'Donnell Ballot. *See* Pet. for Rev. ¶ 21. Relevant here, on May 3, 2024, after the hearing, the Board upheld its

2

decision to canvass the Wagner Ballot, and rejected the O'Donnell Ballot. *See* Pet. for Rev. ¶¶ 26, 32. Appellant appealed to the trial court.

The trial court held a hearing during which Wagner testified. Wagner related that, on April 23, 2024, he appeared in person at his Lake Township polling place to vote in the 2024 Primary Election. *See* Notes of Testimony, May 9, 2024 (N.T.) at 21. He explained that a poll worker informed him that because he had been issued and did not return his mail-in ballot, he would need to complete a provisional ballot. *See* N.T. at 22. Wagner also testified that he followed the instructions of a senior election worker in completing the ballot and its accompanying envelope. *See* N.T. at 24.

> Specifically, Wagner described:
>
> If I can, if I'm allowed, I was more or less being led on how to do this. I have never had to go and sit down at a table and do this throwing out of ballots. And the lady, I guess whatever she was, the head, she basically was leading me through everything. She was telling me what to do, what not to do.
>
> And yes, by the time I finished she had actually said I put the date on something for you so you didn't have to. And she gave me this paper and said this - I said, What's this? She goes, [w]ell, read it and follow the directions on it. It said call in five days to check and see if my ballot was accepted. And I did call. And they gave me another phone number to call. And when I called the other number they said, [y]ep, we have your ballot. It's good. It's accepted. You're verified.

N.T. at 22-23.

> Based on the above, the trial court determined:
>
> [I]n light of the fact that there has been no assertion of fraud with respect to the Wagner Ballot and also noting that Wagner's electoral intent was made exceedingly clear by his credible testimony, [the trial court] affirmed the

3

decision of the [] Board to accept for canvassing Wagner's provisional ballot as cast.

Trial Ct. Op. at 4-5.[3]

O'Donnell also testified at the trial court hearing. O'Donnell related that he appeared in person at his Butler Township polling place, Edgewood District 3 (District), to vote in the 2024 Primary Election, but the poll workers informed him that they could not find his name on their voter list. *See* N.T. at 34. O'Donnell stated that a poll worker let him vote by provisional ballot because he had previously voted at the District. *See id.* O'Donnell further explained that he had purchased a home outside of the District in June of 2023; however, he had been residing with his mother and brother in Butler Township from June of 2023 through March 29, 2024, while he renovated his new home. *See* N.T. at 31-32. The trial court "found the testimony of O'Donnell credible[,]" and further found that, "[o]n March 29, 2024, O'Donnell took up residence at the [new] home." Trial Ct. Op. at 5; *see also* N.T. at 32.

Referencing the Board's decision, the trial court stated: "Despite, again, the seemingly permissive 30-day window provided for by Section 701 of the Election Code,[4] the [Board] decided not to accept the O'Donnell Ballot." Trial Ct. Op. at 7. The trial court nonetheless reasoned:

> But for O'Donnell's decision not to attempt to cast a vote in [his new voting district], nothing prevented O'Donnell from exercising his franchise in the place of his residence and active voter registration for the April 23, 2024[] Primary Election. As the decision of the [Board] visited upon O'Donnell no actual disenfranchisement, [the trial court] find[s] no fault with and affirm[s] the decision of the [Board].

---

[3] The trial court's opinion pages are not numbered.
[4] 25 P.S. § 2811.

4

*Id.* Appellant appealed to this Court.[5]

Preliminarily, the Board asserts that Appellant is trailing his opponent by three votes. The Board maintains that Appellant's challenges to the Wagner Ballot and O'Donnell Ballot are not capable of changing the outcome of the 2024 Primary Election and, as a result, this appeal is moot.

This Court has explained:

> It is well settled that an actual case or controversy must be extant at all stages of litigation, not merely at the time that a complaint is filed; otherwise, this Court will dismiss an appeal as moot. *Harris v. Rendell*, 982 A.2d 1030, 1035 (Pa. Cmwlth. 2009). An "actual case or controversy" is one that is real rather than hypothetical and affects someone in a concrete manner so as to provide a factual predicate for reasoned adjudication. *Finn v. Rendell*, 990 A.2d 100, 105 (Pa. Cmwlth. 2010). Exceptions to the mootness doctrine may be made where the conduct complained of is capable of repetition yet likely to evade judicial review, where the case involves issues of great public importance, or where one party will suffer a detriment without the court's decision. *Horsehead Res. Dev. Co., Inc. v. Dep't of Env't Prot.*, 780 A.2d 856, 858 (Pa. Cmwlth. 2001). As a pure question of law, the issue of mootness is subject to a *de novo* standard of review. *Commonwealth v. Dixon*, . . . 907 A.2d 468, 472 ([Pa.] 2006).

*Gray v. Phila. Dist. Att'y's Off.*, 311 A.3d 1230, 1236 (Pa. Cmwlth. 2024).

Here, however, there are two additional appeals involving Appellant and Candidate Walsh concerning ballots cast in the 2024 Primary Election also pending in this Court, i.e., *In re: Six Ballots in the 2024 General Primary Election* (Pa. Cmwlth. No. 629 C.D. 2024), and *In re: Petition to Cumulate Write-In Votes in*

---

[5] This Court's review "in election contest cases is limited to [an] examination of the record to determine whether the trial court committed errors of law and whether the [trial court's] findings [a]re supported by adequate evidence." *Dayhoff v. Weaver*, 808 A.2d 1002, 1005 n.4 (Pa. Cmwlth. 2002).

*2024 Primary Election for Representative in the General Assembly from the 117th District* (Pa. Cmwlth. No. 651 C.D. 2024). The first case involves the canvassing of 6 mail-in ballots, and the second case involves the canvassing of 22 write-in ballots. In addition, the 12 provisional ballots challenged before the Board on April 29, 2024, and potentially the 2 additional provisional ballots considered by the Board on April 30, 2024,[6] will be canvassed once all appeals related to the 117th House District are resolved. *See* Section 1210(a.4)(4)(vi) of the Election Code, 25 P.S. § 3050(a.4)(4)(vi) ("Pending the final determination of all appeals, the [Board] shall suspend any action in canvassing and computing all challenged provisional ballots irrespective of whether or not an appeal was taken from the [Board's] decision."). Because these appeals and the canvassing of the other 12 provisional ballots are pending, the outcome of this case may affect the result of the 2024 Primary Election. Accordingly, the appeal is not moot.

Appellant argues relative to the Wagner Ballot that the trial court erred by ignoring the plain language of Section 1210(a.4)(5)(ii)(A) of the Election Code, declaring that a provisional ballot shall not be counted if the voter does not sign the provisional ballot envelope. The Board rejoins that well-settled precedent requires interpreting the Election Code in favor of enfranchisement.

Section 1210(a.4)(5)(ii) of the Election Code provides: "A provisional ballot shall not be counted if: (A) either the provisional ballot envelope under clause (3) or the affidavit under clause (2) is not signed by the individual[.]" 25 P.S. § 3050(a.4)(5)(ii). This Court has explained:

> [I]t is uncontested that the ballots failed to conform to statutory requirements [of Section 1210(a.4)(5)(ii) of the Election Code]. [The a]ppellees' position [] is premised upon the rule that we must interpret the Election Code

---

[6] The record before this Court does not indicate whether the Board accepted or rejected these provisional ballots.

liberally in favor of the right to vote, and that we should avoid disenfranchising voters due to minor irregularities in their ballots. However, unlike matters which involve ambiguous statutory language where courts apply principles of statutory construction to interpret same, this matter requires no application of statutory construction principles, for the language is plain and unambiguous - the provisional ballots at issue "shall not be counted." 25 P.S. § 3050(a.4)(5)(ii). Although we do not take lightly the disqualification of any ballot, it is a cardinal rule that, "[w]hen the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S. § 1921(b); *see Tr*[.] *Under Agreement of Taylor*, 164 A.3d 1147, 1155 (Pa. 2017) [(*Taylor*)] ("If the language of the statute clearly and unambiguously sets forth the legislative intent, it is the duty of the court to apply that intent and not look beyond the statutory language to ascertain its meaning.").

*In re: Allegheny Cnty. Provisional Ballots in the 2020 Gen. Election* (Pa. Cmwlth. No. 1161 C.D. 2020, filed November 20, 2020), *appeal denied*, 242 A.3d 307 (Pa. 2020) (internal record citations omitted), slip op. at 7-8.[7]

The *Allegheny County* Court expounded:

Assuming . . . there was evidence of election officials providing misleading advice to these voters, [as in the case before this Court,] this Court, nonetheless, would be unable to excuse the defects in the ballot based on Pennsylvania Supreme Court precedent that, because our General Assembly "pronounced a bright-line rule couched in strong admonitory terms," we "are not free to disregard the explicit legislative direction based on equitable considerations." *In re Nomination Petition of Guzzardi*, 99 A.3d 381 (Pa. 2014) (candidate not excused from filing timely financial statement through principles of equity, even if the election office provided him with misleading information). In other words, "where the [l]egislature has

---

[7] This Court's unreported memorandum opinions issued on or after January 15, 2008, may be cited for their persuasive value. *See* Section 414(a) of this Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a).

attached specific consequences to particular actions or omissions, Pennsylvania courts may not mitigate the legislatively prescribed outcome through recourse to equity," and this holds true even where, as here, election officials allegedly provide erroneous advice and the recipient relies on that advice. *See id.* As explained above, our General Assembly, in clear and unmistakable language, dictated that, in circumstances like this case, the "provisional ballot[s] **shall not be counted**." 25 P.S. § 3050(a.4) (emphasis added). This Court is not at liberty to ignore this mandate.

*Allegheny Cnty.*, slip op. at 9.

> The *Allegheny County* Court opined:

> [A]lthough our decision may be perceived as disenfranchising voters, the Election Code mandates that these deficient ballots **shall not be counted**. This Court emphasizes that it is following and faithfully applying the mandates of our General Assembly and our Supreme Court precedent. Accordingly, the plain language of the Election Code and the lack of evidence in support of the position advanced by the [a]ppellees require this Court to reverse the trial court's decision.

8

*Id*. Similarly, here, the trial court erred by ignoring the mandatory plain language of Section 1210(a.4)(5)(ii)(A) of the Election Code.[8] Accordingly, this Court is required to reverse the trial court's determination to accept the Wagner Ballot.[9]

---

[8] The Dissent cites *In re Canvass of Absentee & Mail-In Ballots of November 3, 2020 General Election*, 241 A.3d 1058 (Pa. 2020) (*In re Canvass*), to support its position that "the Majority's decision to disenfranchise [] Wagner based on a **mere technicality** defies common sense and Supreme Court precedent." *In re: Canvass of Provisional Ballots in the 2024 Primary Election* (Pa. Cmwlth. No. 628 C.D. 2024, filed July 1, 2024), (Wolf, J., concurring/dissenting) (Dissent), slip op. at 6 (emphasis added). However, the issue before the Pennsylvania Supreme Court in *In re Canvass* was whether the Election Code requires a county board of elections to disqualify mail-in or absentee ballots submitted by qualified electors **who signed the declaration on their ballot's outer envelope**, *but did not handwrite their name, their address, and/or a date*, where no fraud or irregularity has been alleged. The *In re Canvass* Court determined that "[*t*]*he Election Code does not require* that the outer envelope declaration include a handwritten name or address at all[,]" only that the voter *fill out* the declaration. *Id.* at 1073 (emphasis added). Thus, the *In re Canvass* Court ruled: "[S]**ince the General Assembly did not choose the information to be provided**, **its omission is merely a technical defect and does not invalidate the ballot**." *Id.* at 1074 (emphasis added). Concerning the date, the *In re Canvass* Court held:

> Although unlike the handwritten name and address, which are not mentioned in the statute, the inclusion of the word "date" in the statute does not change the analysis because the word "shall" is not determinative as to whether the obligation is mandatory or directive in nature. That distinction turns on whether the obligation carries "weighty interests." The date that the declaration is signed is irrelevant to a board of elections' comparison of the voter declaration to the applicable voter list, and a board can reasonably determine that a voter's declaration is sufficient even without the date of signature.

*Id.* at 1076-77. However, in *Ball v. Chapman*, 289 A.3d 1 (Pa. 2023), the Pennsylvania Supreme Court clarified: "[A]lthough the Court's rationale was expressed in serial opinions, an undeniable majority already has determined that the Election Code's command is unambiguous and mandatory, and that undated ballots would *not* be counted in the wake of *In re* [] *Canvass*." *Ball*, 289 A.3d at 21-22 (footnote omitted). The *Ball* Court concluded: "**The Election Code commands absentee and mail-in electors to date the declaration** that appears upon ballot return envelopes, and **failure to comply with that command renders a ballot invalid** as a matter of Pennsylvania law." *Id.* at 28 (emphasis added).

Regarding the O'Donnell Ballot, Appellant argues that the trial court erred by rejecting the provisional ballot because he was registered to vote in another voting district when, in fact, O'Donnell resided in the District within the 30 days preceding the 2024 Primary Election. The Board rejoins that O'Donnell was not disenfranchised but, rather, was registered and able to vote in his new voting district for the 2024 Primary Election.

Section 701 of the Election Code provides, in relevant part:

Contrary to *In re Canvass*, this Court is not determining **whether the obligation** in Section 1210(a.4)(3) of the Election Code, which states that "[t]he individual . . . shall place his signature on the front of the provisional ballot envelope[,]" **is directory or mandatory**. 25 P.S. § 3050(a.4)(3). Rather, this Court is following the unambiguous language of Section 1210(a.4)(5)(ii) of the Election Code, which mandates: "**A provisional ballot shall not be counted if**: (A) either **the provisional ballot envelope** under clause (3) or the affidavit under clause (2) **is not signed by the individual**[.]" 25 P.S. § 3050(a.4)(5)(ii) (emphasis added). As the Pennsylvania Supreme Court stated in *Taylor*, "[**i**]**f the language of the statute clearly and unambiguously sets forth the legislative intent**, **it is the duty of the court to apply that intent and not look beyond the statutory language to ascertain its meaning**." 164 A.3d at 1155 (emphasis added). "It is [] 'well[ ]settled that **the 'so-called technicalities of the Election Code' must be strictly enforced**[.]'' *In re Scroggin*, 237 A.3d [1006,] 1018 [(Pa. 2020)] quoting *In re Canvass of Absentee Ballots of Nov. 4, 2003 Gen. Election*, . . . 843 A.2d 1223, 1234 ([Pa.] 2004) ([]*Appeal of Pierce*[])." *In re Major*, 248 A.3d 445, 449-50 (Pa. 2021) (bold emphasis added; italics omitted). "[A]ll things being equal, the law will be construed liberally in favor of the right to vote but, at the same time, **we cannot ignore the clear mandates of the Election Code**." *Appeal of Pierce*, 843 A.3d at 1231 (emphasis added).

The Pennsylvania Supreme Court has long held:

> [T]he judiciary should act with restraint, in the election arena, subordinate to express statutory directives. Subject to constitutional limitations, the Pennsylvania General Assembly may require such practices and procedures as it may deem necessary to the orderly, fair, and efficient administration of public elections in Pennsylvania. **At least where the [l]egislature has attached specific consequences to particular actions or omissions**, **Pennsylvania courts may not mitigate the legislatively prescribed outcome through recourse to equity**.

*In re Guzzardi*, 99 A.3d at 386 (emphasis added).

[9] Based on the disposition of Appellant's first issue, this Court does not reach Appellant's second and third issues.

10

> Every citizen of this Commonwealth eighteen years of age, possessing the following qualifications, **shall be entitled to vote at all elections**, provided he or she has complied with the provisions of the acts requiring and regulating the registration of electors:
>
> . . . .
>
> (3) He or she shall have resided in the election district where he or she shall offer to vote at least thirty days immediately preceding the election, except that if qualified to vote in an election district prior to removal of residence, **he** or she **may**, **if a resident of Pennsylvania, vote in the election district from which he or she removed his or her residence within thirty days preceding the election**.

25 P.S. § 2811 (emphasis added). Here, the trial court, as the fact-finder, found that O'Donnell had moved into his new residence (which is outside the District) on March 29, 2024. Thus, O'Donnell is a Pennsylvania resident who "removed his . . . residence within [30] days preceding the election[.]" 25 P.S. § 2811(3). Accordingly, "he . . . may . . . vote in the election district from which he . . . removed his . . . residence . . . ." *Id.*

The trial court maintains that it is not disenfranchising O'Donnell's right to vote because he was permitted to vote in the District in which he currently resides. However, because the trial court found that O'Donnell moved out of the District on March 29, 2024, and the 2024 Primary Election occurred on April 23, 2024 (25 days later), it is axiomatic that he did not reside in his new district within the required "[30] days immediately preceding the election[.]" *Id.* Thus, applying the trial court's reasoning to its findings of fact, O'Donnell would not have been permitted to vote in **any** district on April 23, 2024, and would indeed have been disenfranchised. Accordingly, the trial court erred by rejecting the O'Donnell Ballot where O'Donnell resided in the District within 30 days preceding the 2024 Primary Election.

11

For all of the above reasons, the trial court's order is reversed.

_____
ANNE E. COVEY, Judge

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In re: Canvass of Provisional Ballots : 
in the 2024 Primary Election :
                                 :    No. 628 C.D. 2024
Appeal of: Mike Cabell :

## O R D E R

AND NOW, this 1st day of July, 2024, the Luzerne County Common Pleas Court's May 15, 2024 order is reversed.

_____
ANNE E. COVEY, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In re: Canvass of Provisional Ballots : 
in the 2024 Primary Election :
                      : No. 628 C.D. 2024
Appeal of: Mike Cabell : Submitted: May 31, 2024

BEFORE:     HONORABLE ANNE E. COVEY, Judge
                 HONORABLE STACY WALLACE, Judge
                 HONORABLE MATTHEW S. WOLF, Judge

## OPINION NOT REPORTED

CONCURRING/DISSENTING OPINION
BY JUDGE WOLF                          FILED: July 1, 2024

I join the Majority's opinion with respect to mootness and to the extent it enfranchises Mr. Shane O'Donnell. However, because the Majority disenfranchises Mr. Timothy James Wagner, despite his "exceedingly clear" electoral intent, I must respectfully dissent. Trial Ct. Op. at 4-5 (pagination added).

As mandated by our Supreme Court, in deciding election appeals, the courts are required to "adhere to the overarching principle that the [Pennsylvania] Election Code [(Election Code)][1] should be liberally construed so as to not deprive [] electors of their right to elect a candidate of their choice." *In re Canvass of Absentee and Mail-In Ballots of November 3, 2020 General Election*, 241 A.3d 1058, 1062 (Pa. 2020) (*In re Canvass*). The Supreme Court recently reinforced this long-standing principle, expounding that:

---

[1] Act of June 3, 1937, P.L. 1333, *as amended*, 25 P.S. §§ 2600-3591.

> Election laws will be strictly enforced to prevent fraud, but ordinarily will be construed liberally in favor of the right to vote. All statutes tending to limit the citizen in his exercise of the right of suffrage should be liberally construed in his favor. Where the elective franchise is regulated by statute, the regulation should, when and where possible, be so construed as to insure rather than defeat the exercise of the right of suffrage. Technicalities should not be used to make the right of the voter insecure. No construction of a statute should be indulged that would disfranchise any voter if the law is reasonably susceptible of any other meaning.

*Id.* at 1062 (quoting *Appeal of James*, 105 A.2d 64, 65-55 (Pa. 1954)).  Because the sole defect of Mr. Wagner's provisional ballot is a technical one, and his credible testimony before the Court of Common Pleas of Luzerne County (trial court) makes his electoral intent incontrovertible, I would affirm the trial court's and the Luzerne County Election Board's (Board) decision to accept Mr. Wagner's provisional ballot.

At issue here is Section 1210 of the Election Code, which describes the process for casting a provisional ballot.  25 P.S. § 3050.  It provides, in relevant part:

> (a.4)(1) At all elections an individual who claims to be properly registered and eligible to vote at the election district but whose name does not appear on the district register and whose registration cannot be determined by the inspectors of election or the county election board shall be permitted to cast a provisional ballot. Individuals who appear to vote shall be required to produce proof of identification pursuant to subsection (a) and if unable to do so shall be permitted to cast a provisional ballot. An individual presenting a judicial order to vote shall be permitted to cast a provisional ballot.

> (2) Prior to voting the provisional ballot, the elector shall be required to sign an affidavit stating the following:

I do solemnly swear or affirm that my name is _____, that my date of birth is _____, and at the time that I registered I resided at _____ in the municipality of _____ in _____ County of the Commonwealth of Pennsylvania and that this is the only ballot that I cast in this election.

Signature of Voter/Elector

Current Address

Check the Reason for Casting the Provisional Ballot.

Signed by Judge of Elections and minority inspector[.]

(3) After the provisional ballot has been cast, the individual shall place it in a secrecy envelope. The individual shall place the secrecy envelope in the provisional ballot envelope and shall place his signature on the front of the provisional ballot envelope. All provisional ballots shall remain sealed in their provisional ballot envelopes for return to the county board of elections.

25 P.S. § 3050(a.4)(1)-(3). Section 1210(a.4)(5)(ii) refers back to the double-enveloping process discussed in subsection (a.4)(3), stating: "A provisional ballot shall not be counted if: (A) either the provisional ballot envelope under clause (3) or the affidavit under clause (2) is not signed by the individual[.]" 25 P.S. § 3050(a.4)(5)(ii). Here, Mr. Wagner executed the affidavit per subsection (a.4)(2); however, the provisional ballot envelope, which encloses the provisional ballot and the secrecy envelope, was sealed but not signed.

Before the trial court, Mr. Wagner testified unequivocally that he appeared at his Lake Township polling place on April 23, 2024 and completed a provisional ballot with guidance from the head election official. Notes of Testimony (N.T.) at 22-23. After returning the provisional ballot, said official gave Mr. Wagner a number to call to ensure that his provisional ballot was accepted. *Id.* Mr. Wagner

followed up by calling the number and was told: "Yep, we have your ballot. It's good. It's accepted. You're verified." *Id.* at 23. The trial court found Mr. Wagner's testimony regarding his intent to vote by provisional ballot credible. Denise Williams, Chair of the Luzerne County Board of Elections and Registrations also testified. She explained that the Board unanimously voted to accept Mr. Wagner's ballot despite the lack of signature on the provisional ballot envelope. *Id.* at 17. She further explained that this decision is consistent with the Board's practice, stating "since all the elections I've been on the Board, the Board has chosen by majority vote to accept [provisional ballots] with one signature." *Id.* at 18.[2]

An unreported decision of this Court speaks to the issue at hand.[3] In *In re Allegheny County Provisional Ballots in the 2020 General Election* (Pa. Cmwlth., No. 1161 C.D. 2020, filed November 20, 2020) (*Allegheny County*), this Court split on the issue of whether a provisional ballot that lacked a signature on the provisional ballot envelope could be counted. While the majority determined that Section 1210(a.4)(5)(ii)'s use of the word "shall" requires both a signed affidavit and a signed provisional ballot envelope to count the vote, Judge Wojcik's persuasive dissenting view faithfully applied Supreme Court precedent so as to not "blithely disenfranchise" voters "who merely neglected to enter a signature on one of the various signed documents of an otherwise properly executed and timely-submitted provisional ballot." *Allegheny County*, slip op. at 5 (Wojcik, J. dissenting).[4]

---

[2] Ms. Williams has been a member and chairperson of the Board since May 2021. Notes of Testimony (N.T.) at 18.

[3] Unreported decisions of this Court issued after January 15, 2008 are not binding precedent. Section 414(a) of the Commonwealth Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a).

[4] Despite this Court's fracture in *Allegheny County*, and at least one county board of elections practice to count provisional ballot votes sans signature on the provisional ballot envelope, N.T. **(Footnote continued on next page…)**

MSW - 4

Like Judge Wojcik, I too view the provisional ballot envelope signature requirement as a technical one akin to the issue of the color of ink used to fill in an absentee or mail-in ballot. *Id.* As precedent illustrates, technical nonconformance with Election Code provisions is not always fatal, even where the provision at issue includes the word "shall." For example, in *In re Luzerne County Return Board*, our Supreme Court held that absentee ballots marked with green or red pen could be counted despite Section 1306(a)[5] and Section 1306-D(a)[6] of the Election Code's clear directive that voters "***shall*** [] proceed to mark the ballot ***only*** in black lead pencil, indelible pencil or blue, black or blue-black ink, in fountain pen or ball point pen." 290 A.2d 108, 109 (Pa. 1972) (emphasis added). In reaching that conclusion, the Supreme Court arguably applied an even more liberal construction, where the General Assembly coupled the word "shall" with the word "only" in discussing appropriate ink colors. In so doing, the Court echoed that "the power to throw out a ballot for minor irregularities should be sparingly used [] and done only for very compelling reasons. Marking a ballot in voting *is a matter not of precision engineering but of an unmistakable registration of the voter's will* in substantial conformity to statutory requirements." *Id.* (emphasis added) (quoting *Appeal of James*, 105 A.2d at 65).

The lack of signature on Mr. Wagner's provisional ballot envelope is at most a minor irregularity, and Appellant did not present any reason, no less a compelling one, for throwing it out. In this Commonwealth, "[e]very rationalization within the realm of common sense should aim at saving the ballot rather than voiding

---

18, the Supreme Court has yet to speak on this precise issue. *See Allegheny County, petition for allowance of appeal denied* (Pa., No. 338 WAL 2020, filed November 23, 2020).

[5] Added by the Act of March 6, 1951, P.L. 3, *as amended*, 25 P.S. § 3146.6(a).

[6] Added by the Act of October 31, 2019, P.L. 552, 25 P.S. § 3150.16a.

it." *In re Canvass*, 241 A.3d at 1071 (quoting *Appeal of Norwood*, 116 A.2d 552, 554-55 (Pa. 1955)). There is not a hint of an allegation of fraud as to this vote; quite the opposite, it is undisputed that the vote was appropriately cast but for this minor irregularity. On this record, the Majority's decision to disenfranchise Mr. Wagner based on a mere technicality defies common sense and Supreme Court precedent. Accordingly, unlike the Majority, I would affirm the trial court's order to accept Mr. Wagner's provisional ballot.

_____
MATTHEW S. WOLF, Judge