## In re Election of Warren County District Magistrate

*Joseph E. Altomare*, for petitioner Hunter.
*Richard A. Hernan, Jr.*, for respondent Holcomb.

WOLFE, *P.J.*, January 28, 1980—For disposition is the petition of Dalton Hunter (Hunter) contesting the municipal election for District Magistrate Number 37-4-01 held November 6, 1979 against the successful candidate Thomas Holcomb (Holcomb).

## ISSUE

Did the election officials in the general election held November 6, 1979 erroneously discount one ballot cast in Deerfield Township and three ballots cast in Triumph Township requiring the opening of the ballot box and a recount of the ballots cast?

## FINDINGS OF FACT

1. On December 20, 1979, after argument, we granted an evidentiary hearing to be held January 21, 1980 to determine if all of the paper ballots in the Magisterial District 37-4-01 should be recounted.

2. Hunter is the Democratic candidate for the magisterial district and received 400 votes.

3. Holcomb is the Republican candidate for said magisterial district and received 402 votes.

4. Hunter timely petitioned to contest the results pursuant to the Pennsylvania Election Code of June 3, 1937, P.L. 1333, art. XVII, sec. 1756, as amended, 25 P.S. §3456.

5. The election officials of Deerfield Township discounted one ballot because it was "blackened out" in the box opposite Holcomb's name and had a "check mark" in the block opposite Hunter's name.

6. Three ballots in Triumph Township were discounted by the election officials because the corresponding numbered corners thereof were not torn off the ballots before they were placed in the box.

7. The aforesaid four discounted votes were placed back in the box and commingled with the other ballots cast.

8. There is no knowledge by the election officials in whose favor the three ballots were cast containing the corners attached.

9. The ballots carried instructions how to mark the ballot to cast a vote for a straight party ticket, an individual candidate, or a split ticket, and instructions to use a designated color of pencil or ball point pen and:

"Before leaving the voting compartment, fold this ballot, without displaying the markings thereon, in the same way it was folded when received, then leave the compartment and exhibit the ballot to one of the elected officers who shall ascertain by the inspection of the number appearing upon the right hand corner of the back of the ballot whether the ballot so exhibited to him is the same ballot which the elector received before entering the voting compartment. If it is the same, the election officer shall direct the elector, without unfolding the ballot, to remove the perforated corner containing the number, and the elector shall immediately deposit the ballot in the ballot box. Any ballot deposited in a ballot box in any primary or election without having the said number torn off shall be void and shall not be counted."

10. On the back of the ballot is the admonition: "Remove numbered stub immediately before depositing your ballot in ballot box."

11. The voting officials instructed each voter to tear off the corner of the ballot before depositing it in the box to the best of their recollections and in compliance with their understood duties.

12. No voter exhibited any overt manifestations of resentment to the instruction to tear the numbered corner from the ballot.

13. The voters casting the ballots from which the corners were not removed cannot be identified.

14. There was no fraud or intentional wrongdoing on the part of the election officials.

15. If the four ballots cast were improperly discounted, the results thereof could change the election results for district magistrate.

16. The parties have stipulated that in the event the four ballots are ruled to be subject to tally all of the paper ballots cast in the magisterial district shall be recounted.

## DISCUSSION OF LAW AND CONCLUSIONS THEREON

First, we will consider the validity of the vote cast in Deerfield Township which was not counted because of an alleged violation of section 3063(a) of the Election Code which provides in pertinent part for the resolution of the issue before us: "Any erasure or mutilation in the vote in any office block shall render void the vote for any candidates in said block, but shall not invalidate the votes cast on the remainder of the ballot, if otherwise properly marked."

In our judgment this portion of section 3063(a) is not applicable to the narrow issue before us. In our view this sentence of the section makes it clear that if an erasure or mutilation of a vote cast in any office block exists that office block shall be void for any candidates in said block; however, the balance of the ballot is subject to tally.

Here, there existed no erasure. The argument is made, however, that the "blackening out" is a constructive mutilation in the office block for district magistrate and therefore should not be counted. We disagree.

The purpose for not counting such erasures or mutilations casts doubt on the intent of the voter.

Obviously if such erasure or mutilation exists in a particular office block and the voter leaves unclear what he had in mind the voter has disenfranchised himself. In cases where, however, no reasonable person could disagree as to the voter's intent such vote should be counted. The "blackening out" of the entire block with an appropriate check ($\sqrt{}$) in the other block leaves no uncertainty as to the voter's intent.

This is the same situation that occurred in McCaffreys' Appeals, 337 Pa. 552, 11 A. 2d 893 (1940). There, among others, ballot "D" was challenged on the ground that the blocking-out of squares after the names of several candidates and the insertion of the word "omit" at such blocked out squares, by the voter, rendered the ballot capable of identification. The court rejected this argument stating:

"It is manifest from a mere reading of section 1223 of the Act of 1937* that not every mark which may separate and distinguish a ballot will necessarily result in a declaration of invalidity, but only such marks as cannot be reasonably supposed to have been made by the voter except for the very purpose of distinguishing his ballot, and which are appropriate to that end. We find nothing in the markings in ballots 'D' and 'E' rendering them capable of identification within the meaning of section 1223 as thus construed."

In the later case of Mellody Appeals, 449 Pa. 386, 296 A. 2d 782 (1972), the court considered two bal-

---

*Now section 3063(a) of the Act of August 13, 1963, P.L. 707, sec. 19, eff. January 1, 1964, 25 P.S. §3063(a). [Editor's note: Footnote by President Judge Wolfe.]

lots in which the electors blocked out or completely filled in certain blocks for votes rather than place an "x" or ($\sqrt{}$) in the appropriate box or boxes and held that such method, unless there is a clear showing that the filling in of the box was for the purpose of making the ballots identifiable, were valid ballots.

In our view the ballot in the instant case was not an erasure or a mutilation of the office block but rather an underscoring or pronouncement by the voter that his vote was cast for candidate Hunter by the appropriate check ($\sqrt{}$), emphasized by the blackening out of the block opposite candidate Holcomb's name. We find no cases holding that the "blackening out" of a block is a mutilation or erasure and we cannot conclude we should constructively find it so.

Next, we consider the three ballots in the Triumph Township ballot box with the corners still attached.

A portion of section 3055(d) of the Election Code is appropriate to this issue and provides:

"[T]he election officer shall direct the elector, without unfolding the ballot, to remove the perforated corner containing the number, and the elector shall immediately deposit the ballot in the ballot box. Any ballot deposited in a ballot box at any primary or election without having the said number torn off shall be void and shall not be counted."

Both candidates rely upon In re Recount of Ballots, 457 Pa. 279, 325 A. 2d 303 (1974).

Therein, the court discussed this issue at length and concluded that ballots in the boxes without the corners removed should be counted. The court therein found that there was no direction on the ballot instructing the voter to remove the corner

containing the number of the ballot before placing it in the box or that voters were advised by the election officials to do so.

In the instant case the ballot contains extended and detailed instructions to the voter as to the manner of marking his ballot and other instructions as to straight party or split party voting. The voter is instructed to remove the corner and admonished that any ballot deposited without having the number torn off shall be void and shall not be counted.

Our interpretation of the cases is that one should not be disenfranchised by technicalities but rather only if the conduct of the voter in the manner in which he marked or treated his ballot somehow would identify him to the ballot cast. Section 3055(d) is not to be construed limited to the voiding of a deposited ballot without the corner removed but rather in its entirety. This subsection places the burden on the elector as well as the election officials to properly fold the ballot, remove the corner and place it in the election box. Specifically it requires the voter when he leaves the compartment to "exhibit the ballot to one of the election officers who shall ascertain by an inspection of the number appearing upon the right hand corner of the back of the ballot whether the ballot so exhibited to him is the same ballot which the elector received before entering the voting compartment. If it is the same, the election officer shall direct the elector, without unfolding the ballot, to remove the perforated corner containing the number, and the elector shall immediately deposit the ballot in the ballot box."

The onus obviously is on the election official to advise the elector to remove the corner. In our view this burden is not met by a printing of extensive Election Code on the ballot. It would be an unusual

voter who would pause sufficiently long enough in the voting compartment to read the entire instructions. Admittedly experienced voters who have used paper ballots are familiar with the corner tearing procedure but obviously an inexperienced voter could be easily intimidated by these instructions. We do not infer that there is any wrongdoing in placing these instructions on the ballot. Indeed, they are helpful; however, we must therefore assume that all voters read them and followed the instructions. This, of course, presumes that all voters can read and have no difficulty in understanding the instructions. We believe the legislature had this in mind when this burden of direction was placed upon the election officer.

The election officer, Beverly Ann Morrison, was of the opinion that all voters were orally advised to remove the corner to the best of her knowledge. She testified the minority inspector told them to tear off the corner when they were given the ballot. Mrs. Kolick, the election official for Triumph, stated to the best of her knowledge that all the voters were told to remove the corner but some could have been placed in the box without her seeing them. She stated that some voters raveled them up or folded them in such a manner that the corners cannot be seen. She also testified that some of the older people have to be told twice to remove the corner.

In In re Recount of Ballots, 457 Pa. 279, 288, supra, the court observed:

"Unquestionably, the preservation of the anonymity of the voter, and the integrity of the vote are legitimate aims for a state to seek to achieve through legislation. Equally as obvious is that this section was designed to permit a citizen to cast his vote in such a manner that he may enjoy complete

insulation from untoward influences in the exercise of his judgment. However, while it is most appropriate for the state to legislate to achieve these ends those regulatory measures must not ever be permitted to unduly infringe upon the exercise of the right to vote. Clearly, the invalidation of a ballot where the voter has complied with all instructions communicated to him and in the absence of any evidence of improper influence having been exerted, invalidation would necessarily amount to an unreasonable encroachment upon the franchise and the legislative enactment should not be interpreted to require such a result. To rule otherwise would unnecessarily condition the right to vote upon the proper discharge of the responsibility of an election official over whom the voter has no control."

Thus, the court did not find this directive dispositive but rather requires the courts to look to each particular case to ascertain if the integrity of the voter's choice is protected.

Here, there is no evidence whatsoever that would indicate there was any attempt by these three voters to deliberately identify themselves or flout the Election Code or in any way commit a fraud. In light of the testimony of the election officials it seems to us that more likely than not the ballots were placed in the box innocently. The voter has the duty to exhibit the ballot to one of the election officers who has in turn the duty to ascertain by an inspection of the number appearing on the right hand corner on the back of the ballot whether it is the same one exhibited to him before he entered the voting compartment. We do not know how this could be done in each vote cast without the election official being clearly aware that the corner was torn

off the ballot immediately before it was deposited in the box. In any event, we believe as between the right to vote versus the questionable fulfillment of the official's duties that the latter must yield in the absence of any evidence that wrongdoing was afoot by the voter.

For these reasons we find the following

## CONCLUSIONS OF LAW

1. That the one ballot cast in Deerfield Township discounted because the block opposite the name of candidate Holcomb was blackened out is a valid ballot to be tallied.

2. That the three ballots in Triumph Township which were discounted because the corners were not removed are valid and must be tallied. In accordance with the candidates' stipulation all of the paper ballot boxes in District Magisterial Number 37-4-01 shall be opened and recounted and tallied.

For the foregoing reasons we enter the following

## ORDER

And now, January 28, 1980, all of the paper ballot votes cast in the November 6, 1979 General Election for District Magistrate Number 37-4-01 shall be recounted within five days from the date hereof by the board of election existing on November 6, 1979, to wit, Robert L. Ritchie, Evan E. Christy, and Clare L. Morrison.

That both candidates shall be notified of the date and time of the recount and shall have the opportunity to be present.

That the election board shall remove the corners from any ballots in the boxes in such a manner as to preserve the anonymity of the voters.

That the final tallying shall be submitted to the court and thereafter the candidates are granted ten days to file exceptions thereto and in the absence of exceptions the tally shall be final and the board shall certify the winning candidate to the Secretary of the Commonwealth.