## James Appeal.

Argued March 30, 1954. Before STERN, C. J., STEARNE, JONES, BELL, MUSMANNO and ARNOLD, JJ.

*L. Kenneth Harkins*, with him *Harry S. Kalson*, for appellant.

*Craig T. Stockdale*, with him *Harry E. Richter*, for appellee.

OPINION BY MR. JUSTICE MUSMANNO, May 25, 1954:

Subsection 1003 (e) of the Pennsylvania Election Code, 1937, June 3, P. L. 1333 Art. X, 25 P.S. Section 2963, provides for write-in or sticker votes as follows: ". . . There shall also be left at the end of each group of candidates for each other office . . . as many blank spaces as there are persons to be voted for such office, in which space the elector may insert the name of any person or persons whose name is not printed on the ballot as a candidate for such office."

Samuel A. James, Democratic candidate for Council, received 26 sticker votes in the 2nd District and 125 sticker votes in the 3rd District of the Borough of Whitaker. These votes, together with the votes cast and counted in the conventional manner, were sufficient to elect him to the office for which he was nominated. Theodore Rushe, a Republican nominee, who trailed James by some 100 votes, challenged James' election, asserting that his 151 sticker votes were void because James' name already appeared in printed form on the ballot and that, therefore, he could not be a beneficiary of the provision permitting sticker votes.

It appears that, in anticipation of the general November election, Samuel A. James and John W. Race, Jr., both successful in the Democratic primary, joined with two other independent candidates, Jacob W. Fox and Joseph A. Adams, and prepared stickers bearing these four names, with an X already printed against each name. The affixing of the sticker to the ballot thus automatically gave each of the four men a vote, provided no other X appeared on the ballot.

The losing candidate Rushe argues that since James' name already had a place on the ballot, there was no need to supply it with a sticker. This is true. However, if James chose to run with a group of three other

candidates, no extant law prevented him from doing so.

One of the contested ballots (introduced in the court below as an exhibit) has the following appearance:

| Exhibit A | | 10a |
|---|---|---|
| **MEMBER OF COUNCIL** | | |
| **Vote for Four** | | |
| Theodore Rashe | Republican | ☐ |
| Francis A. Orris | Republican | ☐ |
| Sylvester Ackerman | Republican | ☐ |
| John Sinko | Republican | ☐ |
| John W. Race, Jr. | Democratic | ☐ |
| Bernard F. Antol | Democratic | ☐ |
| Edward J. Gretz | Democratic | ☐ |
| Samuel A. James | Democratic | ☐ |
| John W. Race, Jr. | | ☒ |
| Samuel A. James | | ☒ |
| Jacob W. Fox | | ☒ |
| Joseph A. Adams | | ☒ |

It will be observed that although James' name is reproduced twice on the ballot, he received only one vote. On what possible theory can he be denied that

one X, which was the honest expression of the citizen desiring to vote for him?

Chief Justice MAXEY, speaking for this Court in the case of *Bauman Election Contest*, 351 Pa. 451, 456, said: "Marking a ballot in voting is a matter not of precision engineering but of an unmistakable registration of the voter's will in substantial conformity to statutory requirements."

In all the troubles and controversies which entangle citizens in legal complications, there is one golden thread running through the entire intricate skein, no matter how knotted, meshed and intertwisted the strands may be—and that is *intent*. Whether it be in criminal law, contractual law and occasionally even in torts, the intent of the actor is the touchstone of evaluation of his act. And in the sphere of popular elections which, after all, constitute the very warp and woof of democracy, nothing can be more vital in the accomplishment of an honest and just selection than the ascertainment of the intention of the voter. "Election laws will be strictly enforced to prevent fraud, but ordinarily will be construed liberally in favor of the right to vote. All statutes tending to limit the citizen in his exercise of the right of suffrage should be liberally construed in his favor. Where the elective franchise is regulated by statute, the regulation should, when and where possible, be so construed as to insure rather than defeat the exercise of the right of suffrage. Technicalities should not be used to make the right of the voter insecure. No construction of a statute should be indulged that would disfranchise any voter if the law is reasonably susceptible of any other meaning." (29 Corpus Juris Secundum, Sec. 7, page 27.)

The case at bar is of consequence not only to Samuel A. James but to the 151 voters who unmistakably, un-

erringly and precisely demonstrated their intention to vote for James. To look at the ballot reproduced above and say that James is not entitled to the vote so transparently cast for him is to negate the whole genius of our electoral machinery.

The appellee quotes from *Redman's Appeal,* 173 Pa. 59, in support of his argument that a ballot which carries a printed name and a sticker name of the same candidate is invalidated. But in that case (where one vote decided the election) the unknown voter of the tell-tale ballot placed his X after the printed name and then affixed a sticker with another X following the same name. He thus voted twice. Justice STERRETT, speaking for the Court, said: "It was thus manifestly impossible for the election officers, or any one other than the voter himself, to determine which of the acts,—that of 'marking' in the left hand column or that of 'writing' the name 'John S. Lowry' in the blank space,—was first in order of time, or whether the voter intended by both acts to vote for two persons or for only one and the same person, or, in brief, what may have been his purpose in doing what he is admitted to have done in preparing his ballot." (p.64.)

The situation here is quite different. The voter voted only once for Samuel A. James.

It is not charged by anyone that Samuel A. James, or anyone in his behalf, performed a fraudulent act. Even if it were to be said that a minor irregularity was involved, it is not apparent that such a fleeting and fortuitous flaw could invalidate the strikingly clear intent of the voter. Speaking to this very subject, Chief Justice MAXEY said in *Bauman Election Contest,* supra, pp. 454-55: "The power to throw out a ballot for minor irregularities, like the power to throw out the entire poll of an election district for irregularities,

must be exercised very sparingly and with the idea in mind that either an individual voter or a group of voters are not to be disfranchised at an election except for compelling reasons . . . 'the purpose in holding elections is to register the actual expressions of the electorate's will', and that 'computing judges' should endeavor 'to see what was the true result'. There should be the same reluctance to throw out a single ballot as there is to throw out an entire district poll, for sometimes an election hinges on one vote."

In resolving election controversies it would not be amiss to consider the following criteria: 1. Was any specific provision of the Election Code violated? 2. Was any fraud involved? 3. Was the will of the voter subverted? 4. Is the will of the voter in doubt? 5. Did the loser suffer an unfair disadvantage? 6. Did the winner gain an unfair disadvantage?

In view of the fact that in the case at bar not one of these questions can be answered in the affirmative, it would be a stultification of the very principle of democracy behind the Election Code to deprive Samuel A. James of election simply on the basis that the Code does not *ipsissimis verbis* provide for the instant manner in the ascertainment of the voter's intent.

The judgment of the lower court, which dismissed the appeal from the decision of the Allegheny County Board voiding votes cast for Samuel A. James, is reversed. Remanded for issuance of a certification of election to the appellant for the office of Councilman of Whitaker Borough. Costs on the appellee.