## Lower Tyrone Township Election

*Samuel J. Feigus, C. Harold Skodol* and *John Fox,* for petitioners.

*Thomas A. Waggoner,* for respondents.

BANE, P. J., July 21, 1959.—This proceeding is before us in a dual capacity as the county board of elections and as the court of common pleas. This un-

usual circumstance arises in virtue of the presentation to us of two identical petitions, one filed under section 1404, 25 PS §3154, and the other under section 1702, 25 PS §3262, of the Pennsylvania Election Code of June 3, 1937, P. L. 1333, as amended, for a recount and recanvassing of the vote on two referenda submitted at the primary election of May 19, 1959, to the electorate under the local option provision of the Liquor Code: (1) The question whether liquor licenses should be granted in Lower Tyrone Township, Fayette County; and (2) the question as to whether malt beverage licenses should be granted in Lower Tyrone Township, Fayette County; and for an inquiry into the conduct of said election. Both petitions pray that, if palpable error or fraud is found, or if the vote cannot be reconciled, or if the election was not conducted in accordance with the laws of the Commonwealth, the entire poll or vote be excluded, and in addition, the petition presented to the board of elections prays that we "compute and certify *all* votes recorded on said machine or refuse to certify."

All three members of the existing board of county commissioners were candidates at said primary election to succeed themselves; Judge Edward Dumbauld, appointed, was a candidate for a full 10-year term as judge; and on May 15, 1959, our late President Judge W. Russell Carr died. These circumstances required the writer, as the only remaining qualified judge, to designate himself, by order, to act as the return board for the computation and canvassing of returns in the primary election of May 19, 1959, pursuant to the provisions of section 1403 of the Pennsylvaina Election Code of June 3, 1937, P. L. 1333, art. XIV, as amended by the Acts of January 14, 1951 P. L. (1952) 1936, sec. 1, and July 28, 1953, P. L. 686, sec. 1, 25 PS §3153.

Lower Tyrone Township contains within its boundaries two election districts, and at the primary election

held on May 19, 1959, voting machine no. 20738 was used in the first election district and voting machine no. 15860 was used in the second election district. At the time of the computation of the return from each of these districts, the following votes were reported by the township election boards as having been cast by the electorate in their official returns:

First District—Voting Machine #20738

| | Liquor | | Malt | |
|------|------|------|------|------|
| Yes | No | | Yes | No |
| 75 | 104 | | 43 | 56 |

Second District—Voting Machine #15860

| | Liquor | | Malt | |
|------|------|------|------|------|
| Yes | No | | Yes | No |
| 84 | 72 | | 79 | 65 |

The cumulative totals revealed by these returns for the whole of Lower Tyrone Township show that on the question of the issuance of liquor licenses there were cast 159 "yes" votes and 176 "no" votes, and on the question of the issuance of malt beverage licenses there were cast 122 "yes" votes and 121 "no" votes. Almost from the moment these results became known, the court, as well as the permanent registration office, received complaints from various citizens of Lower Tyrone Township as to the manner in which the election on the referenda had been conducted, that widespread confusion existed among the voters and that 73 votes were cast in a fifth column in the first election district which were not included in the official returns of the township election board. By reason of these complaints, both voting machines used in Lower Tyrone Township were placed in protective custody. Within the five-day statutory period, the instant petitions were filed. A hearing thereon was scheduled for June 13, 1959, continued at the request of counsel until June 20, 1959, and completed on June 22, 1959.

By stipulation of record, the testimony taken at the hearing was to be considered by us as the testimony in each of these actions.

Prior to the taking of testimony, a motion was made by counsel for respondents to dismiss the petitions, for the following reasons:

(1) The court is without jurisdiction to grant the relief prayed for in said petition.

(2) Said petition is an attempt to contest a referendum vote and is not authorized under the Election Code, the Liquor Code, the Beverage License Law or any other statute or law of the Commonwealth of Pennsylvania.

After careful consideration of the authorities cited by counsel for the contending parties, we are of the opinion that the respective motions are not well grounded. To the extent and within the limitations prescribed by sections 1404, 25 PS §3154, and 1702 25 PS §3262, this court, sitting judicially, as well as in its capacity as the return board, does have jurisdiction of the subject matter. The measure of the relief to be afforded thereunder is for our determination, and as such, is not subject to such initial objection. We therefore overrule and dismiss the respective foregoing motions, with exception to respondents.

The two voting machines used in the primary election of May 19, 1959, in the two election districts of Lower Tyrone Township were brought into open court and, in the presence of the members of the local election boards, were opened and the votes cast relating to the referenda were recanvassed and computed.

On voting machine no. 20738, used in the first election district of Lower Tyrone Township, it was revealed that 215 voters were recorded as using the machine; on the liquor license referendum there were 75 "yes" votes and 104 "no" votes; on the malt beverage license referendum there were 43 "yes" votes

and 56 "no" votes; and in the next or adjoining fifth column there were recorded 73 votes which appear not to have been cast for anything. These facts are clearly set forth in exhibit "B", a photograph of the tally figures as revealed by the voting machine on the referenda questions.

The totals revealed by voting machine no. 15860 in Lower Tyrone Township, second election district, corresponded with the official returns, with the exception of two votes being recorded in the fifth or adjoining column. No contention has been asserted by either side respecting the validity of the vote cast on the questions in dispute in the second election district.

If these alone were the only facts involved, we would have no hesitation in directing the certification of the returns of the local township election boards. However, it is apparent from the testimony that a series of errors occurred in the conduct of the election on the referenda questions, which is impossible of reasonable comprehension.

First of all, the printer, preparing the tapes or cards for insertion on the face of the voting machine, printed the questions on two separate cards two and three-eighths inches in length, rather than the legal two inches required for proper insertion beneath the voting levers. The "Yes" and "No" on each question were not properly spaced. The ultimate result, upon the insertion of the two cards in the proper slot on the face of the voting machine, was an extension of three-fourths of an inch beyond their proper place, thus bringing into play five voting levers over the cards, rather than the four required to vote upon the questions. These facts are indisputable, and are evidenced in exhibit "A", being a photograph of the face of voting machine no. 20783, when the cards were pushed to the farthest extremity to the left.

When the voting levers are pulled down by the voter to record his vote, these levers assume almost a vertical position from their base. Thus it is readily apparent from an examination of exhibit "A" that one seeking to vote on the liquor question, either "yes" or "no", finds the base of three levers wholly within the area of the card enunciating the question on liquor licenses. Any one of these three levers, when pulled down by the voter, would not, in its vertical position, fall over either the "yes" or "no" printed on the card, yet each of these three levers in their voting position would also be within the area defined by the card bearing the question on liquor licenses. By the same measure, it is also apparent that the base of levers four and five are directly above the "yes" and "no" printed on the card bearing the question on malt beverage licenses. These latter two levers, when pulled down into voting position, would likewise be almost directly over the "yes" and "no" printed thereon.

Therefore, to the innocent voter entering the machine and desiring to cast his vote on the referenda questions, he was confronted with the choice of selecting two of five levers to record his vote in the manner intended by him. That confusion existed and numerous questions and complaints were directed to the local election board, is easily understandable.

To add to this jumbled disorder, there is testimony that these two cards upon which were printed the questions were not securely fastened in their appropriate places, but were readily movable to the right along the slot which held them on the face of the voting machine. Credible witnesses testified that the cards were so moved to the right at the time they cast their vote. Such a circumstance, in the absence of a thorough knowledge of the mechanical construction of the voting machine, would have made it impossible for the un-

informed voter to accurately record his intention on the voting machine. We make such a statement for the reason that a voting machine is a mechanical apparatus. A voter who marks a ballot in the "yes" or "no" column leaves that mark for posterity to examine, and clearly evidences thereby his intention as to the manner in which he cast his vote. Such is not the case on a voting machine. Only a number appears in a column in which the voting lever was deflected. Unless the voter is afforded a clear and understandable opportunity to cast his vote in accordance with his intentions, the inevitable result can only be the chaos evidenced in the instant proceeding.

Each of the five voting levers appearing over the two referenda questions are clearly marked "yes" and "no" in consecutive order across the rear of the voting machine, as evidenced by exhibit "B". No such designation appears on the front of the machine. The only guide a voter has is the proper placement of the "yes" and "no" upon the printed card. If the "yes" and "no" are not beneath the proper voting levers, as required by law, or the cards are shifted in the slot holding them on the face of the machine so that the "yes" or "no" are under levers which hold the opposite designation on the rear of the machine, it is clearly evident that a voter observing "yes" beneath such a lever and voting such lever would record his vote as "no," rather than in the manner which he intended. Because of this circumstance, counsel have argued at length their respective conclusions as to what in fact is revealed by the votes cast in the five columns obviously used by the voters in the First Election District of Lower Tyrone Township. Each of their arguments has some degree of merit, but we can only agree with the witnesses called on behalf of both sides, that when these voters entered the machine they were fully cognizant of the manner in which they desired to cast their votes, but

now that they have viewed the machine and have become familiar with its mechanical functions, there is serious doubt in their minds that their vote was recorded in the manner in which they intended. Because five columns of votes are recorded on the machine, and each such column was so extensively used by the voters, it is patently obvious that each such column represents such an admixture of "yes" and "no" votes on each question that it is now impossible to intelligently untangle them. We may only conclude that in the instant proceedings it is now impossible to determine the will of the people based on the votes cast.

From the testimony we are informed, as heretofore stated, that the local option cards on which the referenda questions were printed were each approximately one-half inch too long, and thus extended over an area on the voting machine which encompassed five pointers or levers, instead of four. Marshall Keefer, an employe of the County of Fayette in charge of installation, maintenance, repair and preparation of voting machines for voting, testified that he personally inserted the referenda questions on the two voting machines in question; that in the rush, pressure and activity incidental to getting voting machines ready and delivered to the 123 election districts of Fayette County, he did not then observe that the first four voting levers were not properly placed over the "yes" and "no" columns for voting. He further testified that early in the morning of May 19, 1959, he received a call that the voting machine in the second election district in Lower Tyrone Township was jammed. He responded to the call immediately, went to the second election district and freed the machine. At that time only two votes had been cast on this machine. While there, and in this connection he is corroborated by the local election board, his attention was called to the fact that the referenda cards were

too long and extended over five voting levers instead of the proper four. He then removed the cards, trimmed each about three-eighths of an inch, reinserted them, and they then extended only over four pointers. Thus, from the second election district all votes were cast in the proper four columns, save only two votes which were recorded in the fifth column; and this circumstance accounts for the fact that no question has been raised as to this latter election district. Mr. Keefer also testified that, because he was extremely busy responding to calls elsewhere, it did not occur to him to proceed to the first election district and make the same correction.

Both Mr. Keefer and Fred Bartock, Director of the Permanent Registration Bureau, testified the cards were printed too long, that they should have been printed on one strip sufficiently long to have permitted the questions to have been locked in place on the machine and that the voting levers beyond the first four columns were not locked or covered, as they should have been, to insure against erroneous voting.

It is clear from the testimony that, almost from the time the polls opened in the morning until they closed at night, the local election board received numerous complaints from voters as to the condition of the referenda questions, and the confusion created thereby; yet they registered no complaint nor made any effort to correct the existing condition. Thus the printer, those in charge of the voting machines and the local election board all contributed to this unfortunate circumstance.

Both the Pennsylvania Election Code and the cases interpreting it make it clear that a recount or recanvass proceeding is not an election contest. The method and scope of such an investigation comprises an examination of the ballot box or voting machine in the

presence of the local election officers, and the taking of testimony for the purpose of ascertaining the will of the people on the question or candidacy involved. The board, as well as the court, has the judicial function of deciding a just and accurate result, when this can be done. If this is impossible, the entire vote should be rejected: McCracken Appeal, 370 Pa. 562; In re Dunmore Borough Election, 42 D. & C. 215. Preservation of the purity of elections is a matter in which the Commonwealth is interested. The purpose of recounting ballots is to ascertain whether there is any substantial fraud or error. This requires something more than the mere counting of votes. It involves the exercise of judicial functions to decide whether certain votes shall be counted or not: Edwards v. Prutzman, 108 Pa. Superior Ct. 184; Boord v. Maurer, 343 Pa. 309.

To ask the voters of Lower Tyrone Township to resolve the issues involved in the manner and under the circumstances in which the questions were submitted, is tantamount not only to substantial error but unintentional fraud. To now ask us, either in our capacity as a return board or as the court, to accurately and justly give effect to the will and intention of the voters, is neither feasible nor possible of determination. Under the authorities of Kittanning Country Club's Liquor License Case, 330 Pa. 311, and Greene Township Malt Beverage License Referendum Contest, 331 Pa. 536, we are of the opinion that under the plenary powers vested in us, both as a return board and as the court, we have not only the power but the duty to reject the entire vote cast on the referenda questions in Lower Tyrone Township. While no objection appears as to the vote cast in the second election district of Lower Tyrone Township, the end result can only be determined by the cumulative vote cast in

both districts. Since the vote in one district is impossible of computation, the whole must fall, and the election held on May 19, 1959, on the liquor license referendum and the malt beverage license referendum be declared null and void.

We have been assured by those in charge of the voting machines of Fayette County that the errors committed in the instant case will not be repeated, that the cards will be printed on proper paper of proper size, that such questions will be locked in place on the voting machine and all pointers or levers beyond those required will be covered and locked against voting.

We need only point out that substantial property rights are here involved. On behalf of petitioners, the loss of the liquor license, a property right in itself, will inevitably result in the collapse of the St. James Country Club venture. On behalf of the citizens of Lower Tyrone Township, as well as the other taxing authorities, fully 50 percent of the revenues derived from the township will eventually be lost. Such serious consequences ought not to be foisted upon either side of the instant issue, when we concede the determination, at best, can be only a guess. Justice and honesty require us to resubmit the issue to the will of the people of Lower Tyrone Township in such a manner and under such circumstances that they may freely and clearly express their will.

### Order

And now, July 21, 1959, the court sitting as a return board, certifies that no lawful and true computation can be made of the vote cast at the election held on May 19, 1959, upon the questions of granting licenses for the sale of liquor and malt brewed beverages in Lower Tyrone Township, Fayette County, and said election is set aside, under the ruling of this court.