In re PENNSYLVANIA GENERAL ELECTION FOR SNYDER COUNTY COMMISSIONER, November 4, 2003.

**Appeal of Gregory L. Shambach of Recount and Certification of Election Returns.**

**Appeal of Richard W. Bickhart.**

Commonwealth Court of Pennsylvania.

Argued Dec. 18, 2003.
Decided Dec. 24, 2003.
Publication Ordered Jan. 21, 2004.

Thomas C. Clark, Middleburg, for appellant.

Michael V. Brown, Harrisburg, for appellee.

BEFORE: FRIEDMAN, Judge, LEAVITT, Judge, KELLEY, and Senior Judge.

OPINION BY Judge FRIEDMAN.

Richard W. Bickhart (Bickhart) appeals from the November 24, 2003, order of the Court of Common Pleas of the 17th Judicial District, Snyder County Branch (trial court), which struck ten write-in votes cast for Bickhart. On December 18, 2003, this court entered an order reversing the trial court. This opinion is in support of that order.

Bickhart and Gregory L. Shambach (Shambach) were the Democratic nominees for the Office of County Commissioner of Snyder County (County) in the November 4, 2003, general election. After the County Return Board (County Board) counted and tallied the election returns, it was determined that Shambach and Bickhart each had received 2,484 votes. As a result, the County Board decided to recount all ballots cast in the County for the Office of County Commissioner.

The recount lasted four days, and witnesses for both Shambach and Bickhart observed the recount. When the recount ended on November 18, 2003, the County Board determined that Shambach had received 2,493 votes, and Bickhart had received 2,500 votes. This made Bickhart the winner of the election. Shambach filed an appeal with the trial court on November 19, 2003.

Before the trial court, Shambach raised various objections, including an objection

to ten write-in votes for Bickhart. Shambach argued that these were invalid under Optical Scan Standard 14, which states, "A properly cast write-in vote shall contain a mark in the target area and, in the space provided, the written name of a candidate **whose name does not otherwise appear on the ballot for that office.**" (C.R., Ex. A at 36) (emphasis added). Shambach asserted that, because Bickhart's name appears on the ballot for the Office of County Commissioner, the ten votes were not "properly cast" write-in votes.

■ After considering Shambach's argument, the trial court struck the ten votes, made rulings on Shambach's other objections and declared Shambach the winner by a vote of 2,491 to 2,490. The trial court stated:

> We note ... that the Standard is contrary to the case law of this Commonwealth by having the possible effect of not counting a ballot from which the voter's intent could clearly be discerned. The intent of the voters on the ten ballots in question ... [was] clear to this Court. They intended to vote for Richard W. Bickhart. However ... **the Standards are binding upon this Court.**

(Trial ct. op. at 22) (emphasis added). Bickhart now appeals to this court.[1]

Bickhart argues that the trial court erred in striking the ten write-in votes for Bickhart pursuant to Optical Scan Standard 14. We agree.

### I. The Standard

■ Section 301(a)(6) of the Help America Vote Act of 2002 (HAVA), 42 U.S.C. § 15481(a)(6), requires that, for voting systems used **in an election for federal office,** each state adopt uniform and nondiscriminatory standards that define what constitutes a vote and what will be counted as a vote for each category of voting system used in the state.[2]

To meet the requirements for voting systems used in an election for federal office, the Commonwealth of Pennsylvania established by enactment of law the Voting Standards Development Board (Standards Board) within the Department of State. *See* Section 204 of the Pennsylvania Election Code (Election Code), Act of June 3, 1937, P.L. 1333, *added by* the Act of December 9, 2002, P.L. 1246, 25 P.S. § 2624. The Standards Board was given the power and duty to develop uniform and nondiscriminatory standards that define what constitutes a valid vote cast through each type of electronic voting system used in the Commonwealth. Section 204(h) of the Election Code, 25 P.S. § 2624(h). The Standards Board, in performing its statutory duty, developed Optical Scan Standard 14.

■ Pursuant to section 204(h) of the Election Code, the Department of State caused the standard "to be published as a **notice** in the Pennsylvania Bulletin." *Id.* (emphasis added). Because the statute only authorized publication of the standards as a "notice," neither the Standards Board nor the Department of State promulgated the standard as a regulation with

---

**1.** Our scope of review in election contest cases is limited to examination of the record to determine whether the trial court committed errors of law and whether the court's findings were supported by adequate evidence. *In re Petition to Contest Primary Election of May 19, 1998,* 721 A.2d 1156 (Pa. Cmwlth.1998).

**2.** Obviously, the election in this case for the Office of County Commissioner is *not* an election for federal office. Thus, the trial court improperly made the standards the basis for its decision.

the force and effect of law.[3] Thus, Optical Scan Standard 14 is merely a statement of policy, and, as such, it does *not* establish a binding norm.[4] *R.M. v. Pennsylvania Housing Finance Agency of Commonwealth*, 740 A.2d 302 (Pa.Cmwlth.1999), *appeal denied*, 563 Pa. 669, 759 A.2d 390 (2000).

In striking the ten write-in votes for Bickhart, the trial court stated that, although Optical Scan Standard 14 is contrary to applicable Commonwealth case law, the standard is "binding upon this Court." (Trial ct. op. at 22.) The trial court clearly erred in reaching this conclusion. As indicated above, Optical Scan Standard 14 is merely a statement of policy; it is *not* a regulation with the force and effect of law and does *not* establish a binding norm.

## II. The Election Code

■ In relying on Optical Scan Standard 14 to strike the write-in votes for Bickhart, the trial court noted that the standard "tracks" the language set forth in section 1112–A(b)(3) of the Election Code, *added by* the Act of July 11, 1980, P.L. 600, 25 P.S. § 3031.12(b)(3). (*See* Trial ct. op. at 23.) The trial court was correct in this regard. Thus, we shall consider whether section 1112–A(b)(3) requires that

the ten write-in votes for Bickhart be stricken.

Section 1112–A(b) governs the conduct of an election in election districts, like the one here, using electronic voting systems and ballot cards.[5] Section 1112–A(b)(3) states that a voter may "mark the write-in position on the ballot for the particular office and, in the space provided therefor on the ballot ... write the identification of the office in question and **the name of any person not already printed on the ballot for that office...**" 25 P.S. § 3031.12(b)(3) (emphasis added).

■ In *Appeal of James*, 377 Pa. 405, 105 A.2d 64 (1954), our supreme court considered nearly identical language that appears in section 1003(e) of the Election Code, 25 P.S. § 2963(e). Section 1003(e) requires that an official election ballot contain space for the elector to insert the name of any person "whose name is not printed on the ballot as a candidate for such office." Construing this language liberally in favor of the right to vote, the court held that a write-in vote will be counted where: (1) the voter cast the write-in vote for a person whose name appears on the ballot; (2) there is no indication of fraud, i.e., double voting; and (3) the intent of the voter is clear.[6] *Appeal of James.*

---

**3.** Agency regulations must be promulgated pursuant to the notice and comment procedures contained in the Commonwealth Documents Law, Act of July 31, 1968, P.L. 769, *as amended*, 45 P.S. §§ 1101–1602. *See R.M. v. Pennsylvania Housing Finance Agency of Commonwealth*, 740 A.2d 302 (Pa.Cmwlth. 1999), *appeal denied*, 563 Pa. 669, 759 A.2d 390 (2000). That was not done in this case.

**4.** To the extent that federal law requires that the Commonwealth promulgate the standards as a binding norm, the Commonwealth has not done so, and, thus, the standards cannot be the basis for our decision here.

**5.** The voters either placed a mark on, or punched holes in, ballot cards, and an optical ballot scanner read the cards. We note that, although a ballot scanner can read marks properly placed on, or holes properly punched in, a ballot card, ballot scanners cannot read write-in votes.

**6.** The court explained:
'Election laws will be strictly enforced to prevent fraud, but ordinarily will be construed liberally in favor of the right to vote. All statutes tending to limit the citizen in his [or her] exercise of the right of suffrage should be liberally construed in his [or her] favor. Where the elective franchise is regu-

Where our supreme court has construed certain language used in a statute, we presume that the General Assembly intends the same construction to be placed upon such language in other statutory provisions. Section 1922(4) of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1922(4). Thus, we interpret section 1112–A(b)(3) of the Election Code to mean that a voter may not cast a write-in vote for persons whose names are printed on the ballot, except where there is no indication of fraud, i.e., double voting, and the intent of the voter is clear.

Here, the ten voters clearly intended to vote for Bickhart, and there is no indication of double voting. During the recount, the members of County Board actually held the ballot cards in their hands and examined the entire ballot. If any of the ten voters had cast a regular vote for Bickhart in addition to the write-in vote, the members of the County Board conducting the recount would have seen it upon examination of the ballot cards. Thus, being mindful that we must not disenfranchise a voter in the attempt to ascertain the intent of his or her vote, we conclude that the County Board did not err in counting the write-in votes for Bick-

hart even though his name appeared printed on the ballot.[7] *See Appeal of James.*

Accordingly, we reverse the trial court's order.

DISSENTING OPINION BY Judge LEAVITT.

I respectfully dissent. "The technicalities of the [Pennsylvania] Election [Code [1]] ... are necessary for the preservation of the secrecy and purity of the ballot and must, therefore, be meticulously observed." *In re Primary Election of April 28, 1964,* 415 Pa. 327, 336, 203 A.2d 212, 217 (1964). While it is true that the decisional law of this Commonwealth generally frowns upon discounting a vote where voter intent can be discerned, *see, e.g., Appeal of James,* 377 Pa. 405, 410, 105 A.2d 64, 66 (1954), "violations of substantive provisions of the [Election] Code cannot be overlooked on the pretext of pursuing a liberal construction." *In re April 10, 1984 Election of East Whiteland Township, Chester County,* 85 Pa.Cmwlth. 594, 483 A.2d 1033, 1036 (1984). Adhering to the foregoing principles, our Supreme Court has indicated that the validity of a ballot must first be ascertained before any factual inquiry into the intention of the voter. *Appeal of Yerger,* 460 Pa. 537, 547, 333 A.2d 902, 907 (1975).[2] *See also James,* 377 Pa. at 410,

lated by statute, the regulation should, when and where possible, be so construed as to insure rather than defeat the exercise of the right of suffrage. Technicalities should not be used to make the right of the voter insecure ....'
*Appeal of James,* 377 Pa. at 408, 105 A.2d at 65–66 (quoting 29 C.J.S. Elections, § 7, p. 27).
The power to throw out a ballot for minor irregularities ... must be exercised very sparingly and with the idea in mind that either an individual voter or a group of voters are not to be disfranchised at an election except for compelling reasons.... 'The purpose in holding elections is to register the actual expression of the electorate's will' and that 'computing judges'

should endeavor 'to see what was the true result.'
*Id.* at 409–10, 105 A.2d at 66.

7. Section 1112–A(b)(3) of the Election Code pertains to the counting of ballots, where the entire ballot is not necessarily examined to determine whether there is, in fact, an overvoting, but not to the **recounting** of the ballots.

1. Pennsylvania Election Code (Election Code), Act of June 3, 1937, P.L. 1333, *as amended,* 25 P.S. §§ 2600–3591.

2. The Court stressed that "once it has been ascertained that a ballot was validly cast, the issue of how to count the ballot is one of the

105 A.2d at 66 (stating that resolution of election controversies must begin with the inquiry "Was any specific provision of the Election Code violated?").

The Election Code sets forth specific requirements for election day procedures and the process of voting. Relative to the instant case, involving an electronic voting system which utilizes paper ballots or ballot cards to register the votes, Section 1112–A(b)(3) of the Election Code provides as follows:

> (3) At all other elections, the voter shall vote for the candidates of his choice for each office to be filled, according to the number of persons to be voted for by him for each office, by making a cross (x) or check (/) mark or by making a punch or mark sense mark in the square opposite the name of the candidate, or he may so mark the write-in position provided on the ballot for the particular office and, in the space provided therefor on the ballot and/or ballot envelope, write the identification of the office in question and the *name of any person not already printed on the ballot for that office,* and such mark and written insertion shall count as a vote for that person for such office.

25 P.S. § 3031.12(b)(3) (emphasis added).[3]

As the Election Code makes clear, a write-in vote may only be counted if the name written in is "not already printed on the ballot for that office." It follows that a write-in vote for a person whose name already appears on the ballot shall not count as a vote for that person. This is the exact situation presented by the ten write-in votes at issue in this case. Because those votes were clearly invalid under the express provisions of the Election Code, I would affirm the trial court's decision to discount those votes, albeit on different grounds.[4]

intention of the voter." *Yerger,* 460 Pa. at 546, 333 A.2d at 907 (citing *McCracken Appeal,* 370 Pa. 562, 88 A.2d 787 (1952)).

**3.** Section 1112–A(b)(3), as part of Article XI–A of the Election Code, was added by the Act of July 11, 1980, P.L. 600. This 1980 enactment post-dates by nearly thirty years the *James* decision which the majority asserts is controlling in this case. It is enough to say in this respect that *James* naturally bows to the superseding statutory authority. In any event, *James* is distinguishable from the present case because, as the majority acknowledges, it involved a different provision of the Election Code, Section 1003(e), 25 P.S. § 2963(e). More importantly, the dispute in *James* involved paper ballots which necessarily had to be visually examined by the tabulators. In the case *sub judice,* the paper ballots were scanned electronically and therefore subject to entirely different, and more recent, Election Code provisions.

**4.** The trial court relied upon "Standards for What Constitutes a Vote" promulgated by the Voting Standards Development Board, specifically Standard Optical Scan 14 ("A properly cast write-in vote shall contain a mark in the target area and, in the space provided, the written name of a candidate whose name does not otherwise appear on the ballot for that office."). I agree with the majority that these "standards" are advisory and do not have the force and effect of law. However, since Standard Optical Scan 14 comports with Section 1112–A(b)(3) of the Election Code, the trial court's analysis is consistent with the law. I would simply rely upon the statute itself, which is free from ambiguity and controlling on the ultimate issue in this case regarding the validity of the challenged ballots.