# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re: Petition to Cumulate Write-In | : | |
| Votes in 2024 Primary Election for | : | |
| Representative in the General | : | |
| Assembly from the 117th District | : | No. 651 C.D. 2024 |
| | : | |
| Appeal of: Mike Cabell | : | Submitted: May 31, 2024 |


BEFORE:    HONORABLE ANNE E. COVEY, Judge
           HONORABLE STACY WALLACE, Judge
           HONORABLE MATTHEW S. WOLF, Judge


## OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE WOLF                                          FILED:  July 2, 2024


Mike Cabell (Cabell) appeals from the May 15, 2024 order of the Court of Common Pleas of Luzerne County (trial court) denying Cabell's petition for review in the nature of a statutory appeal and affirming the Luzerne County Board of Elections and Registrations (Board of Elections) decision to deny Cabell's request to cumulate 22 write-in votes cast in the April 23, 2024 Primary Election for the Republican Party nomination for the Office of Representative in the General Assembly from the 117th District.  The sole issue before the Court is whether the Board of Elections and trial court correctly held that the  Pennsylvania Election Code (Election Code)[1] prohibits the cumulation of write-in votes for candidates whose names are listed on the ballot.  Concluding that the Election Code does so prohibit, we affirm the trial court's order.

---

[1] Act of June 3, 1937, P.L. 1333, *as amended*, 25 P.S. §§ 2600-3591.

## BACKGROUND

The facts are straightforward and not in dispute. Cabell and his opponent, Jamie Walsh, ran a tight race for the Republican Party nomination to represent the 117th District in the Pennsylvania House of Representatives. The results have not been certified, and as it stands, Walsh leads Cabell by three votes.

On May 2, 2024, Cabell asked the Board of Elections to cumulate 22 write-in votes cast for the Republican Party nomination for the Office of Representative in the General Assembly from the 117th District. The Board of Elections denied Cabell's request to cumulate the write-in votes, citing Section 1112-A of the Election Code.[2]

Cabell filed a Petition for Review in the Nature of a Statutory Appeal in the trial court, asserting that the Board of Elections' refusal to cumulate the write-in votes contravenes the Supreme Court's decision in *Shambach v. Bickhart*, 845 A.2d 793 (Pa. 2004), and must be reversed. The Board of Elections responded that intervening changes to the Election Code, namely standards developed by the Voting Standards Development Board (Development Board) that define what constitutes a valid vote, render *Shambach* inapplicable. *See* Section 204(h)(1)-(2) of the Election Code, 25 P.S. § 2624(h)(1)-(2). The trial court held a hearing on May 9, 2024,[3] at which counsel for Cabell, counsel for the Board of Elections, and Walsh, *pro se*, appeared. Following receipt of post-hearing memorandums of law, the trial court

---

[2] Added by the Act of July 11, 1980, P.L. 600, 25 P.S. § 3031.12.

[3] The May 9, 2024 transcript transcribes a single hearing on two petitions filed by Cabell. The portion of the transcript relevant to this appeal is pages 62-104. *See* Original Record, Item No. 21, at 62-104.

affirmed the Board of Elections' decision and dismissed Cabell's appeal. Cabell now appeals to this Court.[4]

## RELEVANT LAW

Because it is pivotal to the disposition of the appeal, we begin with a brief history of legislative changes to the Election Code and relevant cases interpreting such provisions. On July 11, 1980, the General Assembly passed Act 128, which, *inter alia*, added Article XI-A, Electronic Voting Systems, to the Election Code.[5] Included therein is Section 1112-A(b)(2), which discusses "[e]lection day procedures and the process of voting." Section 1112-A(b)(2) provides:

> (b) In an election district which uses an electronic voting system which utilizes paper ballots or ballot cards to register the votes, the following procedures will be applicable for the conduct of the election at the election district:
>
> . . . .
>
> > (2) At primary elections, the voter shall vote for the candidates of his choice for nomination, according to the number of persons to be voted for by him, for each office by making a cross (X) or check (✓) mark or by making a punch or mark sense mark in the square opposite the name of the candidate or by otherwise indicating a selection associated with the candidate, *or he may so indicate on the ballot that the voter is electing to write in the name of a person for the particular office, and insert the identification of the office in question and the name of any person not already listed as a candidate for that office*, and

---

[4] This appeal requires this Court to interpret provisions of the Election Code, which, as a question of law, is subject to a *de novo* standard of review and a plenary scope of review. *Banfield v. Cortes*, 110 A.3d 155, 166 (Pa. 2015).

[5] Act of July 11, 1980, P.L. 600, No. 128, 25 P.S. §§ 3031.1-3031.22.

3

such indication and insertion shall count as a vote
for that person for such office.

25 P.S. § 3031.12(b)(2) (emphasis added).

In 2002, Congress enacted the Help America Vote Act of 2002 (HAVA), which, in part, required each state to adopt standards that define what constitutes a vote and what will be counted as a vote for each category of voting system used in the state. 52 U.S.C. § 21081(a)(6) (*formerly* 42 U.S.C. § 15481(a)(6)). On December 9, 2002, in accordance with the dictates of HAVA, the General Assembly passed what is commonly referred to as "Act 150," which created the Development Board "for the purpose of developing uniform and nondiscriminatory standards that define what constitutes a vote." Section 204(a) of the Election Code, 25 P.S. § 2624(a). As initially enacted, Section 204(h) provided in its entirety:

> (h) The [Development Board] shall have the power and duty to develop uniform and nondiscriminatory standards that define what constitutes a valid vote cast through a paper ballot and what constitutes a valid vote through each type of electronic voting system used in the Commonwealth. On or before July 1, 2003, the [Development Board] shall adopt standards for paper ballots and each type of electronic voting system. The [Department of State] shall cause these standards to be published as a notice in the Pennsylvania Bulletin.

Act of December 9, 2002, P.L. 1246, *formerly* 25 P.S. § 2624(h) (effective December 9, 2002, until later amendment effective May 11, 2006). In accordance with the dictates of subsection (h), the Development Board adopted "Standards for What Constitutes a Vote" (Standards), which were published on August 2, 2003, in Volume 33, Number 31 of the Pennsylvania Bulletin. 33 Pa. B. 3935-80 (Aug. 2,

4

2003).  The Standards provide examples of what constitutes valid and invalid votes on paper ballots and on optical scan electronic voting systems.

Regarding optical scan ballots, Optical Scan 14 discusses what constitutes a properly cast write-in vote.  It provides:

> A properly cast write-in vote shall contain a mark in the target area and, in the space provided, the written name of a candidate whose name does not otherwise appear on the ballot for that office.

33 Pa. B. 3970 (Aug. 2, 2003).  Optical Scan 14 goes on to list visual examples, including the following:



33 Pa. B. 3973 (Aug. 2, 2003).

5

Shortly after the Development Board promulgated the Standards, litigation occurred as a result of a tie in the 2003 General Election race for Snyder County Commissioner. In *Shambach v. Bickhart*, 845 A.2d 793, Gregory Shambach, Richard Bickhart, Rick Bailey, and Steven Bilger were formally listed on the 2003 general election ballot as candidates for three Synder County Commissioner seats. After the election returns were counted, the Snyder County Return Board (Return Board) determined that Bailey and Bilger won two seats, but that the winner of the third seat remained undecided as Shambach and Bickhart had tied for third, each receiving 2,484 votes. The Return Board ordered a recount, which revealed Bickhart lead by seven votes, and he was certified the winner of the third County Commissioner position. Shambach appealed to the trial court, and among other complaints, objected to the Return Board's inclusion of 10 ballots that contained write-in votes for Bickhart. Shambach argued those 10 votes were invalid because a voter may not write in the name of a person who is already listed as a candidate on the ballot pursuant to Section 1112-A(b)(3) of the Election Code.[6]

Following a hearing, the trial court struck the 10 write-in votes for Bickhart. The trial court looked to the Development Board's Standards, and relied on Optical Scan 14, which it categorized as a binding administrative rule, to interpret Section 1112-A(b)(3) to prohibit the cumulation of write-in votes for candidates whose name was printed on the ballot. Bickhart appealed to this Court, which reversed.

This Court noted that Optical Scan 14 was merely published in the Pennsylvania Bulletin as a statement of policy, rather than as a regulation with the

---

[6] Section 1112-A(b)(3) mirrors the language of Section 1112-A(b)(2), but in the context of general elections, as opposed to primaries. *Compare* 25 P.S. § 3031.12(b)(3), *with* 25 P.S. § 3031.12(b)(2).

force and effect of law, and thus was not a binding administrative rule. Thus, the Court turned to precedent and tools of statutory construction to interpret Section 1112-A(b)(3)'s meaning regarding write-in votes. This Court looked to the Supreme Court's decision in *Appeal of James*, 105 A.2d 64 (Pa. 1954), which analyzed a section of the Election Code containing language similar to Section 1112-A(b)(3), and concluded it must be liberally construed in favor of a voter's right to vote.[7] Applying the same liberal construction utilized by the *James* Court, this Court found that write-in votes may be counted for candidates already listed on the ballot if: (1) the voter had not attempted to fraudulently cast the vote; and (2) the voter's intent was clear. *See Shambach*, 845 A.2d at 797-89.

On further appeal, the Supreme Court, by a slim majority, affirmed this Court's decision to count the write-in votes for Bickhart, echoing the analysis in *James* and reinforcing that Section 1112-A(b)(3) must be liberally construed. *Id.* at 802-03. In so doing, the Supreme Court distinguished its prior case, *Appeal of Yerger*, 333 A.2d 902 (Pa. 1975), wherein the Court reached the opposite conclusion—that write-in votes for candidates already listed on the ballots could **not**

---

[7] *James* discussed Section 1003(e) of the Election Code, which provides:

(e) There shall be left at the end of the group of candidates for President and Vice-President of the United States under the title "Presidential Electors," as many blank spaces as there are presidential electors to be elected, in which spaces the elector may insert, by writing or stamping, the names of any individual candidates for presidential electors for whom he desires to vote. There shall also be left at the end of each group of candidates for each other office (or under the title of the office itself in case no candidates have been nominated therefor), as many blank spaces as there are persons to be voted for for such office, in which space the elector may insert the name of any person or persons whose name is not printed on the ballot as a candidate for such office.

25 P.S. § 2963(e).

7

be counted.  *Yerger* dealt with a county that used voting machines, and thus Section 1216(e) of the Election Code controlled.  Like the provisions discussed *supra*, Section 1216(e) provides that an elector may vote "for one or more persons *whose names do not appear upon the machine. . . .*"  25 P.S. § 3056(e).  However, the tail end of subsection (e) adds that "no irregular ballot shall be cast on a voting machine for any person for any office, whose name appears on the machine as a candidate for that office, and any ballot so cast shall be void and not counted."  *Id.*  The Supreme Court found that because Section 1112-A(b)(3) did not include the tail-end language directing that write-in votes for candidates appearing on the ballot "shall be void and not counted," the General Assembly must have intended a different result. *Shambach*, 845 A.2d at 802-03.

In response to the Supreme Court's decision in *Shambach*, the General Assembly amended Section 204 of the Election Code.  On May 11, 2006, Section 204(h) was amended to read:

> (h)(1) The [Development Board] shall have the power and duty to develop uniform and nondiscriminatory standards that define what constitutes a valid vote cast through a paper ballot and what constitutes a valid vote through each type of electronic voting system used in the Commonwealth. On or before July 1, 2003, the [Development Board] shall adopt standards for paper ballots and each type of electronic voting system. The [Department of State] shall cause these standards to be published as a notice in the Pennsylvania Bulletin.

> (2) The standards adopted by the [Development Board] and published by the Department of State in the Pennsylvania Bulletin Volume 33 Number 31 on August 2, 2003, shall, for the general election in 2004 and any primary, municipal, special and general election in 2006 and 2007, have the force and effect of law.

8

Act of May 11, 2006, P.L. 178, *formerly* 25 P.S. § 2624(h) (effective May 11, 2006 until later amendment effective July 14, 2009). Thereafter, the General Assembly continued to amend Section 204(h)(2) to give the Standards the "force and effect of law" for every year after 2007.[8] The most recent amendment occurred on May 15, 2013. Subsection(h)(2) presently reads:

> (2) The standards adopted by the board and published by the Department of State in the Pennsylvania Bulletin Volume 33 Number 31 on August 2, 2003, shall have the force and effect of law until such time as a category of voting system, other than the paper ballot or electronic voting system as defined in section 1101-A, [25 P.S. § 3031.1, ]is approved by the [Secretary of the Commonwealth (Secretary)] for use in this Commonwealth under section 201(b)[, 25 P.S. § 2621.] The [S]ecretary shall publish the approval as a notice in the Pennsylvania Bulletin.

25 P.S. § 2624(h)(2). As it stands, the Development Board's Standards, which provide guidance for what constitutes a vote on paper ballots and on electronic voting systems, have the force and effect of law until a new manner of voting is approved for use by the Secretary. Understanding these shifts in the legal landscape, we turn to the parties' arguments in the present appeal.

## CABELL'S ARGUMENTS

Cabell argues that *Shambach* continues to be good law and that the Board and the trial court's decision not to cumulate write-in votes in his favor contravenes that established precedent. Cabell reiterates the *Shambach* Court's statutory construction analysis and emphasizes that to date, Section 1112-A(b)(2) of the Election Code has not been amended to include language specifically prohibiting the cumulation of write-in votes for a listed candidate.

---

[8] *See* Act of July 14, 2009, P.L. 86; Act of May 13, 2011, P.L. 13.

9

Cabell maintains that such preclusive language is also noticeably absent from Optical Scan 14. He submits that the Development Board understands how to draft a standard expressly stating that a vote shall not be counted and chose not to do so in Optical Scan 14. *Compare* Optical Scan 14, 33 Pa. B. at 3970 (Aug. 2, 2003) ("A properly cast write-in vote shall contain a mark in the target area and, in the space provided, the written name of a candidate whose name does not otherwise appear on the ballot for that office."), *with* Optical Scan 16, 33 Pa. B. at 3974 (Aug. 2, 2003) ("If a voter designates a vote for a named candidate on the ballot and also properly writes in the same candidate in the write-in area, no vote shall count for that candidate."). Absent express language prohibiting the counting of a write-in vote for a candidate listed on the ballot, Cabell argues *Shambach* remains good law. He asks this Court to apply such precedent and reverse the trial court's decision.

## BOARD OF ELECTIONS' ARGUMENTS

The Board of Elections responds that the trial court correctly denied Cabell's request to cumulate write-in votes as he was a candidate listed on the ballot. It maintains that the General Assembly's decision to amend the Election Code to give the Development Board's standards the force and effect of law renders *Shambach*, a decision that predates the amendment, inapplicable. The Board of Elections submits the law is now settled that the Election Code prohibits write-in votes for a person whose name already appears as a candidate on the ballot, as explicitly evidenced by Optical Scan 14.

## ANALYSIS

We agree with the Board of Elections. Optical Scan 14 of the Development Board's Standards makes clear that a write-in vote for a candidate whose name is printed as candidate on the ballot is an "invalid vote." 33 Pa. B. 3973

10

(Aug. 2, 2003). Since the General Assembly amended Section 204(h) of the Election Code in 2006, the Standards, including Optical Scan 14, have had the force and effect of law. The Supreme Court's 2004 decision in *Shambach* predates this legislative change. Cabell's arguments that Optical Scan 14 leaves doubt as to whether a write-in vote for a listed candidate is valid, and that *Shambach* remains applicable despite the legislative changes outlined above, are unavailing.[9]

## CONCLUSION

For these reasons, we affirm the trial court's order.

_____
MATTHEW S. WOLF, Judge

---

[9] Based on this disposition, the Court declines to address Cabell's argument regarding whether he was required to present testimony regarding the various iterations of his name that should be cumulated. *See* Cabell's Brief at 28.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In re: Petition to Cumulate Write-In : 
Votes in 2024 Primary Election for :
Representative in the General :
Assembly from the 117th District :    No. 651 C.D. 2024
 :
Appeal of: Mike Cabell :

# O R D E R

AND NOW, July 2, 2024, the May 15, 2024 order of the Luzerne County Court of Common Pleas is AFFIRMED.

_____
MATTHEW S. WOLF, Judge